HON. SYLVIA O. HINDS-RADIX, ESQ.
Corporation Counsel of the City of New York
Attorney for Plaintiffs
100 Church Street, Room 20-093
New York, New York 10007
Of Counsel: Gerald E. Singleton, Esq.
Office: (212) 356-2036
Fax: (212) 356-2038
Cell: (917) 734-7906; (646) 830-1066
gsinglet@law.nyc.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

The CITY OF NEW YORK, by and through the
FDNY, and the FDNY FOUNDATION, INC.,

                       Plaintiffs,                Civil Action No.

    v.-                                            **22-cv-03190-KAM-PK**

JUAN HENRIQUEZ,

                       Defendant.

-----------------------------------------------------------------X

## SECOND AMENDED COMPLAINT

Plaintiffs, the City of New York (the "City"), by and through the Fire Department of the City of New York (the "FDNY"), and the FDNY Foundation, Inc. (the "FDNY Foundation"), by their attorney, the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, as and for their Second Amended Complaint against Defendant Juan Henriquez ("Defendant" or "Henriquez"), allege as follows:

## NATURE OF ACTION

1. In this action, Plaintiffs seek a declaration of non-infringement, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), concerning Henriquez's claims of trademark

1

infringement with respect to common law trademarks in the word marks, "Medical Special Operations Conference", and the acronym "MSOC" (collectively, the "MSOC Marks"), which have been continuously used by the FDNY and its official not-for-profit organization, the FDNY Foundation, since 2013 in connection with an annual FDNY Medical Special Operations Conference ("FDNY MSOC conference") hosted by the FDNY and the FDNY Foundation. At all relevant times, Defendant Henriquez was employed by the City as a full-time FDNY paramedic.

2. The City also seeks cancellation of a federal trademark registration, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, for the word mark MEDICAL SPECIAL OPERATIONS CONFERENCE (U.S. Reg. No. 6,128,514), which was issued to Henriquez in January 2020, on the grounds that Henriquez made materially false statements in his application for said registration and committed fraud on the United States Patent & Trademark Office ("USPTO").

**PARTIES**

3. The City is a municipal corporation organized pursuant to the laws of the State of New York, with its principal offices in the State of New York, County of New York.

4. The FDNY is an agency of the City, with offices at 9 Metro Tech Center, Brooklyn, New York 11201.

5. The FDNY Foundation is a not-for-profit corporation organized under the laws of the State of New York, with its principal place of business also located at 9 Metro Tech Center, Brooklyn, New York 11201.

6. Henriquez is a citizen of the State of New York, residing at 3519 Avenue R, Brooklyn, New York 11234.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that Henriquez resides in the Eastern District of New York and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

9. The City owns all trademarks, logos, names and insignia associated with the FDNY, including the acronym "FDNY" (the "FDNY Mark") and a distinctive shield design (the "FDNY Shield") (collectively, the "FDNY Trademarks"), as shown below:



10. The City owns valid and subsisting federal trademark registrations for the FDNY Mark (U.S. Reg. Nos. 2,606,740 and 3,026,049) and the FDNY Shield (U.S. Reg. No. 3,075,308) in a number of classes, all of which have been and continue to be in used in commerce.

11. The City also owns valid and subsisting trademark registrations for the FDNY Trademarks in New York, California, Canada, Mexico, the European Union, the United Kingdom, China, and Japan.

12. As a result of the FDNY's exceptional reputation, and the media attention and other publicity the FDNY has received throughout the years, particularly after the events of September 11, 2001, the FDNY Trademarks have become famous and are recognized throughout the United States and the world as uniquely designating the FDNY.

**The FDNY Foundation**

13.     The FDNY Foundation funds educational programs that advance the FDNY's goals, which include maintaining operational excellence, reaching out to the community with an array of fire and life safety programs, and ensuring that the City's firefighters and emergency medical service personnel have the best available training and equipment.

14.     The FDNY Foundation engages in fund-raising and is the only organization authorized to raise funds on behalf of the FDNY.

**Annual FDNY Medical Special Operations Conference**

15.     Since 2013, the FDNY, in partnership with the FDNY Foundation, has hosted an annual multi-day FDNY MSOC conference for first responders at the FDNY Fire Academy on Randall's Island, at which attendees including military, federal, state and local medical responders share their experiences, best practices and ideas.

16.     The FDNY MSOC conferences are promoted with and prominently use the MSOC Marks as designations of source.

17.     The FDNY and the FDNY Foundation promote the FDNY MSOC conferences on various social media platforms and through a website at https://www.fdnypro.org/msoc/, which prominently use the FDNY Trademarks in conjunction with the use of the MSOC Marks.

**Defendant Henriquez's Prior Role with Regard to the Annual FDNY MSOC Conference**

18.     Defendant Henriquez is, and at all relevant times was, a full-time FDNY paramedic employed by the City.

19.     Starting in 2013 and continuing until 2018, Henriquez periodically worked with Dr. Doug Isaacs of the FDNY Medical Division, and assisted Dr. Isaacs in the planning and administration of the annual FDNY MSOC conferences.

20. Henriquez and Dr. Isaacs had become acquainted through the FDNY and, in 2012, Dr. Issacs proposed the idea for an FDNY MSOC conference to FDNY leadership and Henriquez volunteered to participate.

21. In an email to Dr. Isaacs dated July 9, 2012, a true copy of which is annexed hereto as Exhibit 1, Henriquez stated in relevant part: "As you can see, there isn't much in the form of symposium or actual focused conference. . . . I'm really excited about this and I'm willing to contribute any resources that I have. I think it's a great project and really want to thank you for letting me be part of it."

22. To date, the FDNY and the FDNY Foundation have jointly conducted nine annual FDNY MSOC conferences, the first of which was conducted in May 2013.

23. In connection with his work on the FDNY MSOC conferences, Henriquez entered into a written Donation Agreement with the FDNY Foundation, dated as of November 1, 2013, pursuant to which he helped create a website and other intellectual property for the FDNY MSOC conferences..

24. A true copy of the Donation Agreement signed by Henriquez is annexed hereto as Exhibit 2.

25. Henriquez expressly acknowledged and agreed that all services provided to the FDNY Foundation pursuant to the Donation Agreement were specifically created for use in connection with FDNY MSOC conferences and he irrevocably transferred and assigned all right, title and interest in such materials, including copyrights, renewals and extensions thereto, to the FDNY Foundation or its assignees.

26. Among other materials, Henriquez created a design logo for the FDNY MSOC conference (the "FDNY MSOC Design Logo") with the words "Medical Special Operations

Conference" and the words "Fire Department City of New York" or "FD•RESCUE SCHOOL•NY", as shown below:

 

27. The FDNY and the FDNY Foundation used the FDNY MSOC Design Logo to promote the annual FDNY MSOC conferences in 2015 through 2019.

28. On or about January 25, 2018, Henriquez was interviewed for a podcast concerning the origins of the annual FDNY MSOC conferences by FDNY Chief of Staff Elizabeth Cascio in which he described the "void" that had existed before the FDNY started doing the conferences in 2013.

29. At the beginning of the podcast, Henriquez stated: "Most of the time that we can get together is when there is a disaster, especially in this business, and we learn a lot from those disasters, but there's never been a way to get those lessons learned out to the general special operations community. So, we figured, you know we've been missing out for years. Other than small groups during training sessions, there was no discussion on past incidents and how they were approached, what kind of medicine was performed or medications that were administered during those disasters that we could have learned from, so the interest was there, the void was there, and the Fire Department was very supportive in getting this off the ground."

30. A true copy of the podcast is posted on the FDNY Foundation's website at https://www.fdnypro.org/s3-e1-the-fdny-medical-special-operations-conference-msoc-with-dr-doug-isaacs-and-paramedic-juan-henriquez/.

31. In or around November 2018, after six years of ongoing use of the MSOC Marks by the FDNY and the FDNY Foundation, Henriquez asserted for the first time that he, and not the FDNY or the FDNY Foundation, owned or controlled the terms "Medical Special Operations Conference" and "MSOC."

32. On or about December 24, 2018, Henriquez registered the domain name, www.medicalspecialoperations.com in his own name.

33. In January 2019, Henriquez sent emails to the FDNY, true copies of which are collectively annexed hereto as Exhibit 3, in which he requested that the FDNY "unpublish any references to the MSOC artwork/patches, MSOC, and MSOC branding" and stated that "the term MSOC is not an FDNY term, rather it belongs to the Medical Special Operations Community Organization, which I personally received permission from to use this term."

34. Referring to the FDNY MSOC Design Logo depicted in paragraph 26 above, Henriquez stated that the "original MSOC [logo] was licensed and did not include the FDNY logo or the words Rescue School."

35. Upon information and belief, the "Medical Special Operations Community Organization" mentioned by Henriquez in his emails to the FDNY referred to a small group of individuals, which included Joe Hernandez, who operates a company named Disaster Medical Solutions, Inc. and Vincent Johnson, who was then a fellow FDNY paramedic.

36. Henriquez claims that, beginning in 2011, he started a conference with other individuals and held MSOC conferences in 2011 and 2012 that were hosted by federal and local partners outside of New York, and that he later suggested to Dr. Isaacs and FDNY leadership that the FDNY also host an MSOC event in New York City.

37. Prior to 2019, Henriquez did not tell Dr. Issacs and/or FDNY leadership that he had worked on other MSOC conferences in 2011 and 2012 outside of New York.

38. Prior to 2019, Henriquez did not assert any claim of ownership of trademark rights in the MSOC Marks.

39. As of 2013, when the FDNY and the FDNY Foundation first started using the MSOC Marks in connection with their FDNY MSOC conferences, Henriquez had only used the MSOC Marks in connection with the two aforementioned conferences held in 2011 and 2012 that he says were hosted by federal and state partners.

40. The federal and state partners that hosted the 2011 and 2012 conferences included individuals who were associated with Disaster Medical Solutions Inc. and Joe Hernandez.

41. Henriquez did not tell the federal and state partners that hosted the conferences in 2011 and 2012 that he owned trademark rights in the MSOC Marks at the tie that he worked on those conferences.

42. Henriquez did not claim that he owned any trademark rights in the MSOC Marks at any time in 2011 or 2012.

43. Henriquez never mentioned or discussed a licensing agreement with FDNY leadership and/or the FDNY Foundation with respect to the use of the MSOC Marks by the FDNY and the FDNY Foundation in connection with the FDNY MSOC conferences.

44. Henriquez never entered in to a written license agreement with the federal and state partners who hosted the 2011 and 2012 MSOC conferences concerning their use of the MSOC trademarks for such conferences.

45. Henriquez did not share in the revenues derived from the 2011 and 2012 MSOC conferences.

46. Henriquez has not entered into any written agreement with the Medical Special Operations Community concerning the use of the MSOC Marks.

47. Henriquez has not entered into any written agreement concerning the Guardian Centers use of the MSOC Marks.

48. Henriquez has not entered into any written agreement concerning Palm Beach County Fire Rescue's use of the MSOC Marks.

49. Henriquez has not entered into any written agreement with Disaster Medical Solutions, Inc. concerning its use of the MSOC Marks,

50. Henriquez has not entered not any written agreement with Joe Hernandez concerning his use of the MSOC Marks.

51. Henriquez has not entered into any written agreement with the State Urban Search and Rescue (SUSAR) concerning its use of the MSOC Marks.

52. Henriquez was one of many FDNY paramedics who worked on the FDNY MSOC conferences between 2013 and 2018.

53. Henriquez did not control or have final approval rights over the content of materials that he or anyone else created for the FDNY MSOC conferences.

54. Henriquez had to seek approval from FDNY leadership and/or his FDNY supervisors to work on the FDNY MSOC conferences.

55. Henriquez did not have any control over how the revenues derived by the FDNY and the FDNY Foundation from conducting the FDNY MSOC conferences were spent.

56. Henriquez had to seek approval from appropriate FDNY superiors for the design and use of the FDNY Design logo that he created, as depicted in paragraph 26.

57. Henriquez did not control or have final approval rights over the content of materials prepared by non-FDNY speakers and instructors at the FDNY MSOC conferences.

58. Henriquez did not exercise quality control over all segments of the FDNY MSOC conferences.

59. Henriquez was not given authority by the FDNY to exercise overall control over the FDNY MSOC conferences that he worked on during the period from 2013 to 2018.

60. Henriquez never voiced criticism about the quality of the FDNY MSOC conferences to any of his superiors at the FDNY or anyone at the FDNY Foundation during the period from 2013 to 2018.

61. Henriquez has been brought up on disciplinary charges and disciplined for insubordination by the FDNY in connection with his duties as an FDNY paramedic.

62. On or about January 18, 2019, the FDNY sent a letter to Henriquez taking issue with respect to his claim of ownership in the MSOC Marks and the FDNY MSOC Design Logo.

63. A true copy of the FDNY's January 18, 2019 letter to Henriquez is annexed hereto as Exhibit 4.

64. Henriquez maintains and operates the www.medicalspecialoperations.com website (the "MSOC Website") in New York.

65. Henriquez uses the MSOC Website to solicit donations to a 501(c)(3) organization, which refers to the Medical Special Operations Community, Inc., a corporation organized and existing under the laws of the State of Florida (the "MSOC Entity").

66. Henriquez operates the MSOC Website for the benefit of the MSOC Entity.

67. Henriquez is Vice President of the MSOC Entity.

68. Henriquez uses the MSOC Website to promote Medical Special Operations Conferences that are hosted by the MSOC Entity.

69. Henriquez uses the MSOC Website to sell merchandise bearing the MSOC Marks and the MSOC logo created by Henriquez.

70. People residing in the State of New York have donated money to the MSOC Entity using the MSOC Website.

71. People residing in the State of New York have purchased MSOC-branded merchandise using the MSOC Website.

72. People residing in the State of New York has registered for MSOC conferences using the MSOC Website.

**Defendant's Federal Trademark Registration**

73. On October 14, 2019, Henriquez filed an application with the USPTO to register the words "Medical Special Operations Conference" for "Charitable fundraising services by means of organizing and conducting special events" based on a claimed date of actual use and first actual use in commerce of January 30, 2011.

74. The USPTO issued a Nonfinal Office Action dated February 26, 2020, with respect to Henriquez's application, which stated that registration was being refused on the ground that the applied-for mark was "merely descriptive" and not registrable under Section 2(e)(1) of the Lanham Trademark Act, 15 U.S.C. § 1052(e)(1).

75. Since Henriquez's application had indicated that the applied-for mark had been in use in commerce since 2011, the assigned Trademark Examiner advised Henriquez that he had the option to amend his application to assert a claim for registration under Section 2(f) of the Lanham Trademark Act, 15 U.S.C. § 1052(f), based on acquired distinctiveness, if he could attest to his

substantially exclusive and continuous use of the applied-for mark in commerce for at least five years preceding the date of his application.

76. In response to the Office Action, Henriquez filed an amended application on April 20, 2020, a true copy of which is annexed hereto as Exhibit 5, in which he declared under penalty of perjury that he had been using the applied-for mark on a substantially exclusive and continuous basis during the five years preceding the date of his application.

77. Henriquez's amended application stated that no other person or entity had any interest in the applied-for mark or had used a substantially similar mark in commerce.

78. Based on the sworn statements made by Henriquez in his amended application, the USPTO issued U.S. Reg. No. 6,128,154 for the word mark, Medical Special Operations Conference.

79. Henriquez submitted no proof to the USPTO to support the statement that he had used the applied-for mark on a substantially exclusive and continuous basis during the five-year period prior to the date of his application.

80. Henriquez submitted no proof to the USPTO to show that the MSOC Mark had acquired distinctiveness and secondary meaning as a designation of source for goods and/or services originating with him.

81. In fact, as of the date of his application, Henriquez had not used the applied-for mark on a substantially exclusive and continuous basis during the five years preceding the date of his application, without counting and relying on the use of such mark by the FDNY and the FDNY Foundation.

82. Henriquez did not mention in his amended application that the FDNY or the FDNY Foundation had been using the MSOC Marks for the FDNY MSOC conferences and that the FDNY had disputed his claimed ownership rights of the MSOC Marks.

83. At no time prior to filing an amended application with the USPTO to register the descriptive words MEDICAL SPECIAL OPERATIONS CONFERENCE as a trademark had Henriquez ever claimed that an implied license between him and the FDNY and the FDNY Foundation existed and can be inferred from the facts and circumstances surrounding his work on the annual FDNY MSOC conferences during the years 2013 through 2018.

84. Henriquez claims that, pursuant to such implied license, he authorized and granted permission to the FDNY and the FDNY Foundation, as licensees, to use the MSOC Marks in connection with the FDNY MSOC conferences.

85. Henriquez claims that he alone owns all of the goodwill associated with the FDNY and FDNY Foundation's use of the MSOC Marks in connection with the FDNY MSOC conferences from 2013 to 2018..

86. Henriquez does not claim any ownership rights or interest in the FDNY Trademarks.

87. Prior to 2019, Henriquez never used the word "license" in any of his dealings or communications with the FDNY and/or the FDNY Foundation9.

88. Henriquez never claimed that an implied license existed between the parties until after the filing and commencement of this action.

89. Henriquez never discussed the material terms of a trademark license agreement for the use of the MSOC Marks by the FDNY and the FDNY Foundation with Dr. Isaacs or any of his superiors at the FDNY, or anyone at the FDNY Foundation

90. There was in fact no meeting of the minds between the parties concerning the material terms of an implied license to use the MSOC Mark because such a license was never contemplated or discussed,

91. The parties never discussed any of the material terms of a trademark license, including but not limited to the consideration for such a license; the term and duration of such a license; the payment of royalties for the licensed use; what goods and services would be covered by such license; and who would be responsible for quality control.

## COUNT I
### (Declaratory Judgment of Non-Infringement of Trademark Infringement

92. The City repeats and re-alleges the allegations of paragraphs 1 through 91 hereof as though fully set forth herein.

93. Henriquez claims to be the exclusive owner of valid trademark rights in the MSOC Marks and he claims that he impliedly licensed non-exclusive rights to the Plaintiffs to use such marks in connection with their FDNY MSOC conferences, beginning in 2013.

94. At all relevant times, Henriquez owed a duty of undivided loyalty to the City in all of his dealings with the City, including an obligation to exercise the utmost good faith and act solely for the benefit of the City in all matters and transactions in which the City has an interest, by reason of his full-time employment with the City,

95. Henriquez owed a duty to not act adversely to the interests of the City in any part of a transaction with the City, including his purported implied licensing of trademarks rights in the MSOC Marks to the Plaintiffs.

96. Henriquez also owed a duty as an employee not to omit to disclose any purported interest he might have in the MSOC Marks, which would naturally influence the City's conduct with respect to the use of the MSOC Marks.

97. At no time prior to 2019 did Henriquez disclose to the FDNY and/or the FDNY Foundation that he had any purported personal ownership interest in the MSOC Marks, despite the fact that such interest would naturally have influenced the City's conduct in using the MSOC Marks and allowing Henriquez to work on the FDNY MSOC conferences.

98. Henriquez repeatedly has claimed that the use of the MSOC Marks by the FDNY and the FDNY Foundation in connection with the FDNY MSOC conferences infringes upon his registered trademark for the word mark, MEDICAL SPECIAL OPERATIONS CONFERENCE, and his alleged common law trademark rights in the acronym MSOC.

99. In 2012, when Henriquez first suggested the idea of having FDNY sponsored MSOC conferences to Dr. Isaacs and to FDNY leadership, he had no valid claim of exclusive trademark rights with respect to the MSOC Marks because the marks were merely descriptive terms and could be freely used by anyone to hold MSOC conferences, including the Plaintiffs.

100. The MSOC Marks were not then registrable as federal trademarks by Henriquez because they had not acquired distinctiveness and secondary meaning as trademarks designating Henriquez as a single source and origin of goods and services bearing such marks.

101. As of 2013, when Plaintiffs began using the MSOC Marks, Henriquez's prior use, if any, of such marks had been in a merely descriptive context and such marks had not acquired distinctiveness and secondary meaning as a source indicator for any goods or services originating with him.

102. Plaintiffs have a right to use the MSOC Marks for their FDNY MSOC conferences without seeking or obtaining the permission or consent of, or an express or implied license from, Henriquez with respect to such use.

103. Plaintiffs have acquired common law trademarks rights in the MSOC Marks by reason of their adoption and continuing use of such marks in connection with the FDNY MSOC conferences over almost a decade, beginning in 2013.

104. The MSOC Marks have acquired distinctiveness and secondary meaning as trademarks associated with the FDNY by reason of their prominent use of such marks in connection with the annual FDNY MSOC conferences.

105. Notwithstanding the issuance of a federal trademark registration to Henriquez for the word mark, MEDICAL SPECIAL OPERATIONS CONFERENCE, Plaintiffs have a continuing right as a "prior user" to use the MSOC Marks for the FDNY MSOC conferences because they began using the MSOC Marks prior to the date of Henriquez's trademark registration.

106. The FDNY and the FDNY Foundation began using the MSOC Marks in 2013, in good faith, with Henriquez's knowledge and consent, prior to the assertion by Henriquez of any claim of ownership of trademark rights in the MSOC Marks.

107. Henriquez has not, at any relevant time, controlled the quality of the goods and services provided by Plaintiffs to attendees of the FDNY MSOC conferences.

108. Henriquez has not policed or controlled the use of the MSOC Marks by third parties who have hosted MSOC conferences outside of New York since 2011.

109. To the extent that Henriquez has in fact authorized third parties to use the MSOC Marks for conferences outside of New York, he has done so without a meeting of the minds regarding the terms of such use and has engaged in naked licensing, thereby forfeiting any

trademark rights he might otherwise possess in connection with the use of the MSOC Marks by such third parties.

110. By reason of the foregoing, the continuing use of the MSOC Marks by Plaintiffs in connection with FDNY MSOC conferences does not infringe upon any valid trademark rights owned by Henriquez.

111. An actual and justiciable controversy exists between the parties concerning their respective trademark rights in the MSOC Marks and, therefore, a judicial declaration is necessary and appropriate so that the Plaintiffs may ascertain their rights regarding the continuing use of the MSOC Marks.

112. The FDNY Trademarks are used prominently by the FDNY and the FDNY Foundation in conjunction with all uses of the MSOC Marks, thereby eliminating any likelihood of consumer confusion concerning the parties' respective uses of the MSOC Marks.

113. Henriquez does not possess any evidence of actual or likely consumer confusion regarding the parties' respective uses of the MSOC Marks.

114. Based on the foregoing, the City respectfully requests that the Court enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Plaintiffs have not infringed on any valid trademark rights belonging to Henriquez through and by reason of their use of the MSOC Marks for FDNY MSOC conferences.

115. The City further requests that the judgment declare that Henriquez breach his duty of loyalty to the City as an employee by claiming the existence of an implied license with respect to the use of MOSC Marks and by claiming that he owns all of the goodwill associated with the FDNY MSOC conferences on which he worked.

## COUNT II

**(Cancellation of Defendant Henriquez's Trademark Registration Based on Fraud)**

116. The City repeats and re-alleges the allegations of paragraphs 1 through 1115 hereof as though fully set forth herein.

117. Henriquez committed fraud on the USPTO within the meaning of section 14(c) of the Lanham Act by making materially false statements in his amended application for U.S. Reg. No. 6,128,514 for the word mark, MEDICAL SPECIAL OPERATIONS CONFERENCE.

118. In his amended application for such registration, Henriquez falsely stated that "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive."

119. Henriquez also falsely stated that "[t]he mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least the five years immediately before the date of this statement."

120. Henriquez knew or should have known that such statements were material and would be relied on by the USPTO in issuing a registration.

121. Henriquez knew or should have known that such statements were materially false.

122. Henriquez knew at the time he filed the amended application that the FDNY and the FDNY Foundation had been using the applied-for mark, MEDICAL SPECIAL OPERATIONS CONFERENCE since 2013.

123. Henriquez knew at the time he filed the amended application that the FDNY and the FDNY Foundation had claimed ownership of trademark rights in the applied-for mark, not as a licensee or authorized user deriving their rights from Henriquez.

124. Henriquez knew at the time he filed the amended application that he had not used the applied-for mark in commerce on a substantially exclusive and continuous basis during the five-year period preceding the date of his application.

125. Henriquez knew at the time he filed the amended application that he had claimed, and was continuing to claim, that the use of the applied-for mark and the MSOC acronym by the FDNY and the FDNY Foundation in connection with the FDNY MSOC conferences allegedly infringed upon his rights in the MSOC Marks.

126. By reason of the foregoing, Plaintiffs respectfully request that the Court declare that Henriquez committed fraud on the USPTO and order the cancellation of U.S. Reg. No. 6,128,514, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119.

**WHEREFORE,** Plaintiffs pray that this Court:

A. Declare that Plaintiffs have not infringed upon any trademark rights belonging to Defendant Henriquez by their use of the MSOC Marks in connection with their FDNY MSOC conferences and declare that Henriquez breached his duty of loyalty as a full-time employee of the City by claiming that he granted an implied license to the City with regard to the use of the MSOC Marks, which license was never contemplated or discussed by the parties..

B. Declare that Defendant committed fraud on the USPTO and order cancellation of U. S. Reg. No. 6,128,514 pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119.

C. Find that this is an exceptional case and award Plaintiffs their reasonable fees.

      D.    Grant Plaintiffs such other, further, and different relief as this Court deems just and proper.

Dated:    New York, New York
              November 7, 2022

> HON. SYLVIA O. HINDS-RADIX
> Corporation Counsel of the
>   City of New York
> *Attorney for Plaintiffs*
> 100 Church Street, Room 20-093
> New York, New York 10007
> tel:    (212) 356-2036
> fax:   (212)356-2038
> cell:  (917) 734-7906; (646) 830-1066
> gsinglet@law.nyc.gov
>
> By: *[signature]*
>      Gerald E. Singleton

20