UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

CITY OF NEW YORK, by and through the     :
FDNY, and the FDNY FOUNDATION, INC.,   :

                                 :

                 Plaintiffs,   :

                                 :

         -against-   :

                                 :

JUAN HENRIQUEZ,   :

                                 :

            Defendant.   :

                                 :

------------------------------------------------------------------- x

**ORDER AND DECISION**

22-CV-3190 (KAM)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Before me is a motion filed by Defendant Juan Henriquez against the City of New York (the "City") by and through the Fire Department of New York (the "FDNY") and the FDNY Foundation, Inc. (the "Foundation") (collectively, the "FDNY Parties"), seeking to disqualify Gerald Singleton, Esq., counsel for the FDNY Parties. (*See* "Motion," Dkt. 64.) For the reasons stated herein, the Motion is denied.

**BACKGROUND**

This case centers on a trademark dispute between the FDNY Parties and Mr. Henriquez, who is employed by the FDNY. The relevant background facts are set forth in this Court's Memorandum & Order granting Mr. Henriquez's Motion for Preliminary Injunction. *City of N.Y. by and through FDNY v. Henriquez,* No. 22-CV-3190 (KAM)(PK), 2023 WL 2186340 (E.D.N.Y. Feb. 23, 2023).

Mr. Henriquez filed the Motion on February 14, 2023. The FDNY Parties filed an opposition on February 17, 2023 ("Opp. to Motion," Dkt. 66), and Mr. Henriquez filed a reply on February 20, 2023. ("Reply to Motion," Dkt. 68.)

Subsequently, on June 13, 2023, the FDNY Parties filed a Third Amended Complaint, adding additional claims ("TAC," Dkt. 86), and on June 28, 2023, Mr. Henriquez filed an Answer as well as

1

First Amended Counterclaims with Third Party Claim, naming Mr. Singleton as a co-defendant. ("FACC," Dkt. 88.)

As relevant to the Motion, Mr. Henriquez alleges that in late 2017 and 2018, after holding multiple Medical Special Operations Conference ("MSOC") events hosted by the FDNY, he discovered financial improprieties relating to the FDNY and/or Foundation's handling of conference funds and diverting of profits that were meant to benefit the front-line responder community. (FACC ¶¶ 47-48; Declaration of Juan Henriquez ("Henriquez Decl.") ¶ 31, Dkt. 49.) As a result, in late 2017 and early 2018, he reported his concerns to FDNY Assistant Medical Director Dr. Douglas Isaacs, who brushed off Mr. Henriquez's concerns. (FACC ¶ 49; Henriquez Decl. ¶ 32.)

In August 2018, the New York City Department of Investigation ("DOI") began an investigation into Mr. Henriquez for financial misdealing related to the FDNY-MSOC events. (FACC ¶ 60.) The DOI concluded in October 2019 that the original allegations were unsubstantiated. (*Id.* ¶ 60.) Mr. Henriquez alleges that the FDNY and Foundation officials caused the DOI to investigate him. (*Id.* ¶ 60.)

On January 14, 2019, Mr. Henriquez emailed the Foundation's leadership requesting that the FDNY and Foundation stop using the MSOC trademarked name ("MSOC Mark"), logos, and materials related to the FDNY-hosted MSOC events. (FACC ¶ 56); *Henriquez*, 2023 WL 2186340, at *24. On January 18, 2019, Moira Archer, the Deputy Director of Contracts, Agreements and Licensing in the FDNY's Bureau of Legal Affairs, responded to Mr. Henriquez's email, asserting the FDNY's ownership over the MSOC Mark, logo, and name. (FACC ¶ 61; Declaration of Gerald Singleton ("Singleton Decl.") ¶ 5, Dkt. 52-2; Declaration of Moira Archer ("Archer Decl.") ¶ 5, Dkt. 52-3.)

Mr. Singleton first became aware of Mr. Henriquez in July 2019 in connection with an MSOC conference Mr. Henriquez was organizing in Wichita, Kansas. (Singleton Decl. ¶ 5.)

On September 27, 2019, FDNY Deputy General Counsel Carol Moran sent a cease-and-desist letter to the Medical Special Operations Community, Inc. and its officers, including Mr. Henriquez, with respect to the MSOC Mark and logo. (FACC ¶ 62; Singleton Decl. ¶ 6; Archer Decl. ¶ 9.) On October 14, 2019, Mr. Henriquez requested a meeting to discuss MSOC. (Archer Decl. ¶ 10.)

On November 6, 2019, Mr. Henriquez met with Mr. Singleton and Ms. Archer at the FDNY headquarters. (FACC ¶ 50; Singleton Decl. ¶ 13; Archer Decl. ¶ 11.) According to Mr. Henriquez, he reported his concerns about the financial improprieties to Mr. Singleton and Ms. Archer. (FACC ¶ 50.) Mr. Henriquez claims that, at the end of this meeting. Mr. Singleton told him, "I don't know how much you value your job, but you should think hard about whether or not you want to pursue this." (FACC ¶ 50); *see Henriquez*, 2023 WL 2186340, at *8. Mr. Henriquez later testified that "Mr. Singleton . . . told me that . . . if I value my job, you better, you know, think about this or who you work for." (Tr. of Jan. 18, 2023 Evidentiary Hr'g. 107:14-18, Dkt. 83.)

Both Mr. Singleton and Ms. Archer deny that Mr. Henriquez brought up any claims of financial improprieties at the meeting. Mr. Singleton stated in a declaration that Mr. Henriquez "did not make any claims regarding financial irregularities pertaining to the FDNY MSOC." (Singleton Decl. ¶¶ 12-13.) Ms. Archer stated that "Henriquez has alleged that he reported a claim of financial improprieties on the part of Dr. Isaacs to me at our meeting, but I have no recollection of him making such claim at that meeting or at any other time prior to this litigation." (Archer Decl. ¶¶ 11-12.) Their accounts of what Mr. Henriquez did say at the meeting differ slightly, with Mr. Singleton stating that "Henriquez made statements at the meeting suggesting that he thought he was the victim of ethnic employment discrimination," while Ms. Archer noted that "Henriquez stated that actions had been taken against him, which he believed to be retaliation, and that he had filed a complaint with the EEOC." (Singleton Decl. ¶ 13; Archer Decl. ¶ 11.)

At some point after the meeting, the FDNY initiated a disciplinary proceeding against Mr.

Henriquez with the FNDY's Bureau of Investigations and Trials ("BIT"). (FACC ¶ 63); *see Henriquez,*

2023 WL 2186340, at *8. In March 2021, the BIT Hearing Officer determined that all disciplinary

charges against Mr. Henriquez were "unsubstantiated" and "should not have been escalated as a

disciplinary matter." (*Id.*) Mr. Henriquez alleges that the BIT disciplinary proceeding was initiated

based on a referral from Mr. Singleton. (FACC ¶ 63.) He also alleges that between 2020 and 2022,

the FDNY withheld from him award citations, high performance ratings, and overtime opportunities,

and denied him requested shift transfers. (*Id.* ¶ 64.)

On May 24, 2021, Mr. Henriquez, through his counsel, sent a letter to the FDNY's Equal

Employment Opportunity Commissioner about his financial whistleblowing allegations and

employment discrimination. (FACC ¶ 65; Singleton Decl. ¶ 7.) Mr. Singleton responded to the letter

on July 16, 2021 in which he "reject[ed] the claims." (Singleton Decl. ¶ 7; FACC ¶ 66.)

On May 10, 2022, Mr. Henriquez's counsel sent a cease-and-desist letter to the FDNY,

threatening litigation for its continued use of the MSOC Mark. (FACC ¶ 68; Singleton Decl. ¶ 8);

*Henriquez,* 2023 WL 2186340, at *8. Mr. Singleton responded to the letter on May 25, 2022,

"categorically rejecting the claims." (Singleton Decl. ¶ 8; FACC ¶ 69.)

On May 31, 2022, the FDNY Parties, through Mr. Singleton, filed the instant lawsuit. (Compl.,

Dkt. 1.) In June 2022, the parties engaged in settlement discussions, during which Mr. Henriquez

reiterated his whistleblowing allegations. (FACC ¶ 70-71; *see* Singleton Decl. ¶ 10); *Henriquez,* 2023

WL 2186340, at *8. Mr. Henriquez claims that Mr. Singleton subsequently threatened to bring

defamation claims against Mr. Henriquez and stated that he intended to report Mr. Henriquez to the

New York City Conflict of Interest Board. (FACC ¶ 72.)

According to Mr. Singleton, on July 1, 2022, he rejected Mr. Henriquez's June 30, 2022

settlement proposal, and, after receiving a July 1, 2022 email from Mr. Henriquez's counsel containing

allegations of corruption and wrongdoing on the part of Dr. Isaacs, responded, noting that the allegations were very serious and, if unfounded, could be libelous. (Singleton Decl. ¶¶ 10, 14.)

On July 8, 2022, the FDNY Parties filed a First Amended Complaint, adding new claims. (Am. Compl., Dkt. 8; FACC ¶ 73); *Henriquez*, 2023 WL 2186340, at *8. In a Second Amended Complaint, they removed these claims and one claim of unfair competition. ("SAC," Dkt. 26.) On December 15, 2022, Mr. Henriquez filed an answer to Count I of the Second Amended Complaint and counterclaims against Plaintiffs alleging, among other things, whistleblower retaliation. (Ans. and Counterclaims, Dkt. 32); *Henriquez*, 2023 WL 2186340, at *8.

In February 2023, Mr. Henriquez received a cease-and-desist letter from an attorney for Guardian Centers LLC ("Guardian Centers"), an emergency training center in Perry, Georgia that had previously worked with Mr. Henriquez, threatening legal action based on statements he made during this litigation. (FACC ¶ 76; Tr. of Jan. 18, 2023 Evidentiary Hr'g. 161:7-162:12); *see Henriquez*, 2023 WL 2186340, at *3. Because the letter was sent to Mr. Henriquez's wife's private email, which was only known to the FDNY as an emergency contact, Mr. Henriquez alleges that the City colluded with Guardian Centers to harass him. (FACC ¶ 76.)

## DISCUSSION

Mr. Henriquez moves to disqualify Mr. Singleton pursuant to New York Rules of Professional Conduct 3.7(a), arguing that he "is a key – and in some cases the only – witness for numerous material facts relevant to Henriquez's whistleblowing counterclaims." (Mot. at 4.) Specifically, Mr. Henriquez claims that Mr. Singleton will be called to testify as to his communications during the November 6, 2019 meeting, his involvement in adverse employment actions and harassment toward Mr. Henriquez, and his various litigation decisions in this lawsuit. (Mot. at 4-5.)

## I.       Legal Standard

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). "The dispatch of this duty is discretionary in nature." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). "[D]isqualification 'is a drastic measure that is viewed with disfavor in this Circuit.'" *JKAYC, L.L.C. v. Noah Bank*, No. 20-CV-943 (PKC)(SMG), 2021 WL 4893677, at *5 (E.D.N.Y. Oct. 20, 2021) (quoting *Canfield v. SS&C Techs. Holdings, Inc.*, No. 18-CV-8913 (ALC), 2020 WL 3960929, at *2 (S.D.N.Y. July 10, 2020)). "[D]isqualification is only warranted in the rare circumstances where an attorney's conduct poses a significant risk of trial taint." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010).

To determine whether disqualification of counsel is proper, courts in the Second Circuit look to the standards for attorneys outlined in the state they are in. *See Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). As relevant here, Rule 3.7(a) of the New York Rules of Professional Conduct provides that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." Rule 3.7(a), often referred to as the "advocate-witness" rule, is designed to protect the integrity of the judicial system. *Murray*, 583 F.3d at 178. Because Rule 3.7 "lends itself to opportunistic abuse," such motions, "particularly motions under the witness-advocate rule," are "subject to fairly strict scrutiny." *Id.* (citations and internal quotation marks omitted).

To succeed on a motion based on the advocate-witness rule, the movant must meet its burden of showing "that counsel's testimony is both necessary to the proceeding and substantially likely to prejudice the client's case." *Rothman v. Complete Packaging and Shipping Supplies, Inc.*, No. 22-CV-2821 (JS)(ST), 2023 WL 2740862, at *2 (E.D.N.Y. Mar. 31, 2023) (citing *Capponi v. Murphy*, 772 F. Supp. 2d 457, 471-72 (S.D.N.Y. 2009)).

"In determining necessity courts look not to whether counsel possesses 'discoverable knowledge, but whether trial of the case will in fact require his testimony.'" *Rothman* 2023 WL 2740862, at *2 (quoting *Wachovia Bank, Nat. Ass'n v. Focus Kyle Grp., LLC*, 896 F. Supp. 2d 330, 332 (S.D.N.Y. 2012)). Courts "should consider 'factors such as the significance of the matters, weight of the testimony, and availability of other evidence.'" *Hecklerco, LLC v. Yuuzoo Corp. Ltd.*, No. 15-CV-5779 (VM)(DF), 2016 WL 7742783, at *4 (S.D.N.Y. Dec. 16, 2016) (quoting *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 790-91 (S.D.N.Y. 2015). "Testimony may be relevant and even highly useful but still not strictly necessary." *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 667 (S.D.N.Y. 1995) (citation omitted).

Prejudice in this context is understood as testimony that is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Murray*, 583 F.3d at 178 (citations and internal quotation marks omitted). The movant must demonstrate "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Id.* at 178 (citation omitted) (alteration in original). "The more speculative the potential prejudice, the less likely a court will be to grant a motion to disqualify." *Shabbir v. Pakistan Intern. Airlines*, 443 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) (citation omitted).

## II.     Analysis

Mr. Henriquez contends that Mr. Singleton's testimony is necessary to establish whether at the November 6, 2019 meeting Mr. Henriquez communicated whistleblowing information to Mr. Singleton, and whether Mr. Singleton threatened Mr. Henriquez's job in response.

"Where an attorney's testimony would be cumulative or corroborative of that provided by other witnesses, the testimony cannot be said to be necessary, and disqualification is inappropriate."

*Hecklerco*, 2016 WL 7742783, at *4 (collecting cases); *see John Wiley & Sons, Inc. v. Book Dog Books, LLC*,

126 F. Supp. 3d 413, 423 (S.D.N.Y. 2015) ("the availability of other witnesses is essentially fatal to the

'necessity' prong of the disqualification inquiry"); *Solow v. Conseco, Inc.*, No. 06-CV-5988 (BSJ)(THK),

2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) ("courts deem a lawyer's testimony necessary only if

there [are] no other witnesses to the circumstances at issue"). Ms. Archer was also present at the

November 6, 2019 meeting and could testify as to what occurred. Indeed, in their respective

declarations, both Mr. Singleton and Ms. Archer stated that Mr. Henriquez did not report any claims

of financial improprieties at this meeting. (Singleton Decl. ¶ 13; Archer Decl. ¶¶ 11-12.) Mr.

Henriquez does not show why Mr. Singleton's testimony regarding this meeting is necessary when Ms.

Archer was present and can testify about whether Mr. Henriquez brought up any allegations of

financial improprieties and whether Mr. Singleton made threats about Mr. Henriquez's job.[1]

Mr. Henriquez also argues that Mr. Singleton's testimony is necessary to establish whether he

played a role in adverse employment actions and harassment against Mr. Henriquez, including

initiating a BIT proceeding against him and colluding with Guardian Centers in sending a cease-and-

desist letter to him. (Mot. at 4-5.) However, such testimony is too speculative at this point to warrant

the severe sanction of Mr. Singleton's disqualification. *See, e.g.*, *Hecklerco*, 2016 WL 7742783, at *3

("mere speculation is not an adequate basis for a court to determine that an attorney's continued

representation will undermine the integrity of the adversary process") (cleaned up); *Finkel v. Frattarelli*

*Bros.*, 740 F. Supp. 2d 368, 376 (E.D.N.Y. 2010) ("Speculation as to the testimony that counsel would

give is not sufficient to support a motion to disqualify"). "The conjuring of perhaps possible scenarios

is inadequate grounds for a demonstration of the need to call an attorney to testify, or a demonstration

that such testimony would be prejudicial." *Paramount Comm., Inc. v. Donaghy*, 858 F. Supp. 391, 398

---

[1] The fact that Mr. Singleton stated that Mr. Henriquez said he "was the victim of ethnic employment discrimination" (Singleton Decl. ¶ 13) while Ms. Archer said that he believed was the victim of retaliation. (Archer Decl. ¶ 11) does not render Mr. Singleton's testimony regarding the meeting necessary.

(S.D.N.Y. 1994) (internal quotation marks omitted).  Mr. Henriquez points to no facts supporting Mr. Singleton's role in these actions.  Therefore, his assertion that Mr. Singleton could testify to his role in these actions is based on conjecture and insufficient to justify disqualification.

Finally, Mr. Henriquez asserts that Mr. Singleton must testify about various litigation decisions Mr. Singleton purportedly made in this lawsuit.  However, the reason for these litigation decisions is "not a significant issue of fact that would trigger application of [the] advocate-witness rule," and is "more appropriately addressed by Rule 11 than a motion to disqualify."  *Hecklerco,* 2016 WL 7742783, at \*8 (citations and internal quotation marks omitted).  Furthermore, although Mr. Henriquez brought a First Amendment Whistleblower Retaliation claim against Mr. Singleton (FACC ¶¶ 101-14), alleging, *inter alia*, that his bringing of this lawsuit and the First Amended Complaint constituted retaliatory conduct, that allegation is also premised on speculation.

Accordingly, Mr. Henriquez has failed to meet his burden of establishing that any testimony that Mr. Singleton could offer is necessary.

Mr. Henriquez also fails to show how Mr. Singleton's testimony would be prejudicial to the FDNY Parties, let alone that there is a substantial likelihood of such prejudice.[2]  Mr. Henriquez asserts only that "it is clearly prejudicial to the City Parties to be represented by their *co-defendant*, who is charged with the exact same illegal conduct as the City Parties."  (Def.'s Reply at 2 n.1) (emphasis in original.)

---

[2] Mr. Henriquez incorrectly asserts that only New York Rule of Professional Conduct 3.7(b), not 3.7(a), requires a movant to show that an attorney's testimony is substantially likely to prejudice his client's case.  (Def.'s Reply at 2 n.1.)  To the contrary, it is well settled that Rule 3.7(a) requires a showing of prejudice.  *See, e.g.*, *Montana v. RMS Indus. Of N.Y., Inc.*, No. 19-CV-2889 (DRH)(ARL), 2020 WL 5995965, at \*2 (E.D.N.Y. 2020) (noting that Rule 3.7(a) requires a showing of "the substantial likelihood of prejudice") (citation and internal quotation marks omitted); *Gershon v. Lurie*, No. 12-CV-2514 (SJF)(WDW), 2013 WL 12495071, at \*3 (E.D.N.Y. Dec. 9, 2013) (same); *Finkel*, 740 F. Supp. 2d at 373 (same).  Moreover, Mr. Henriquez mischaracterizes *Murray*.  (*See* Def.'s Reply at 2 n.1.)  There, the Second Circuit explicitly stated that "plaintiffs seeking disqualification under Rule 3.7(b) must make a considerably higher showing of prejudice than would be required under Rule 3.7(a)," making clear that Rule 3.7(a) requires a showing of prejudice.

"[T]he case law is clear that allegations based on conjecture do not suffice." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07-CV-7983 (DAB)(HBP), 2014 WL 1201905, at *9 (S.D.N.Y. Mar. 24, 2014) (citations omitted); *see Finkel*, 740 F. Supp. 2d at 377-78 ("Without evidence to support defendants' assumptions about the [plaintiffs'] motivations and the facts that [counsel] would testify to, this Court cannot conclude that this testimony would be prejudicial to plaintiffs' case"). Mr. Henriquez has not described how Mr. Singleton's testimony would contradict the FDNY Parties' account of the facts. *See Rothman*, 2023 WL 2740862, at *3 (finding no prejudice where defendants failed to provide evidence that plaintiff's testimony would differ from his counsel"); *see also Soberman v. Groff Studios Corp.*, No. 99-CV-1005 (DLC), 1999 WL 349989, at *7 (noting that Rule 3.7(a)'s predecessor, DR 5-102(B), "comes into play where a lawyer's testimony would contradict or undermine his client's factual assertions") (citation and internal quotation marks omitted).

Because Mr. Henriquez has failed to specify any prejudice Mr. Singleton's testimony would cause the FDNY Parties, he has failed to meet his burden. *See, e.g., Nimkoff*, 2014 WL 1201905, at *9 (no prejudice where Plaintiff "fail[ed] to specify [counsel's] projected testimony, how that testimony would conflict with or be sufficiently adverse to [the client] and why there [was] a substantial likelihood of prejudice"); *Acker v. Wilger*, No. 12-CV-3620 (JMF), 2013 WL 1285435, at *3 (S.D.N.Y. Mar. 29, 2013) (no prejudice where defendant "fail[ed] even to assert, let alone show, that [counsel's] testimony . . . would be substantially prejudicial to Plaintiff").

Finally, even if Mr. Singleton's testimony were necessary and substantially likely to prejudice the FDNY Parties, Rule 3.7(a) would not apply if Mr. Singleton does not serve as trial counsel. (*See* Pl.'s Opp. at 4.) The "witness-advocate rule primarily concerns the trial process," and "does not bar counsel's participation in pre-trial proceedings." *Harris v. Tobin*, No. 16-CV-5610 (JGK), 2017 WL 685573, at *2 (S.D.N.Y. Feb. 21, 2017); *see, e.g., Montana v. RMS Indus. Of N.Y., Inc.*, No. 19-CV-2889 (DRH)(ARL), 2020 WL 5995965, at *3 (E.D.N.Y. 2020) (Rule 3.7(a) "requires disqualification when

the trial attorney will be required to testify at trial and does not concern pre-trial representation"); *Bal v. Manhattan Democratic Party*, No. 16-CV-2416 (PKC), 2018 WL 11466339, at \*2 (S.D.N.Y. Nov. 6, 2018) ("Rule 3.7 is directed at trials and the interests underlying the rule are not implicated by an attorney participating in motion practice before the court") (citation omitted).  Courts in this Circuit have routinely held that a member of the trial team that "will not act as an advocate before the jury" is not "properly considered trial counsel for purposes of Rule 3.7(a)."  *Murray*, 583 F.3d at 179 (citing *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004)); *see, e.g.*, *Bakken Res., Inc. v. Edington*, No. 15-CV-8686 (ALC), 2017 WL 1184289, at \*3 (S.D.N.Y. Mar. 29, 2017) ("[g]enerally, disqualification under Rule 3.7 'is triggered only when the attorney actually serves as an advocate before the jury'") (quoting *Finkel*, 740 F. Supp. 2d at 373); *Air Italy S.p.A. v. Aviation Technologies, Inc.*, No. 10-CV-20 (JG)(JMA), 2011 WL 96682, at \*5 (E.D.N.Y. Jan 11, 2011) ("The concerns identified by the Second Circuit in *Murray*, 583 F.3d at 178, are not implicated if [counsel] continues to serve an advocate for [his client] in this matter as long as he does not appear as an advocate before a jury at trial").

## CONCLUSION

For the reasons stated above, the Motion is denied.

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:  September 29, 2023
        Brooklyn, New York