UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF NEW YORK, by and through the FDNY, and the FDNY FOUNDATION, INC., | Case No. 22 Civ. 3190 |
| Plaintiffs, | |
| v. | |
| JUAN HENRIQUEZ, | |
| Defendant. | |
| JUAN HENRIQUEZ | |
| Counterclaim Plaintiff, | |
| v. | |
| CITY OF NEW YORK, by and through the FDNY, the FDNY FOUNDATION, INC., and GERALD SINGLETON, | |
| Counterclaim Defendants. | |

**DEFENDANT-COUNTERCLAIM PLAINTIFF JUAN HENRIQUEZ'S
REPLY SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

Jordan Fletcher
FLETCHER LAW PLLC
234 Fifth Avenue, 2nd Floor
New York, NY 10012
Tel: (212) 320-8945
Fax: (347) 983-0046
jordan@fletcherlaw.co

*Counsel for Defendant and
Counterclaim-Plaintiff Juan
Henriquez*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**………………………………………………………………...1

**ARGUMENT**………………………………………………………………………………..…1

1. Licensee Estoppel Applies, at a Minimum, as to the Foundation…………………………1

2. The FDNY Parties' Focus on Secondary Meaning in 2013 Ignores Controlling Second Circuit Law………………………...……………..………………………………..………7

3. The FDNY Parties Fail to Rebut Validity or Likelihood of Confusion……………………9

**CONCLUSION**……………………………………………………………………………10

# TABLE OF AUTHORITIES

**Cases**

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850 (C.D. Ill. 2013) ............................................................................................................................. 4

*Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326 (6th Cir. 1973) ..................................................... 6

*Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414 (S.D.N.Y. 2019) ......................... 6

*City of New York v. Henriquez*, 22 Civ. 3190, 2023 WL 2186348 (S.D.N.Y. Feb. 23, 2023) ............................................................................................................................. passim

*De Forest Radio Tel. & Tel. Co. v. Unites States*, 23 U.S. 236 (1927) ......................................... 4

*Doeblers' Pennsylvania Hybrids v. Doebler*, 442 F.3d 812 (3d Cir. 2006) ................................... 8

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277 (S.D.N.Y. 2000), *aff'd*, 4 F. App'x 81 (2d Cir. 2001) ........................................................................................................ 6

*Excell Consumer Prods. Ltd. v. Smart Candle LLC*, 11 Civ. 7220, 2013 WL 4828581 (S.D.N.Y. Sep. 10, 2013) ............................................................................................................... 8, 9

*Idaho Potato Comm. v. M. M. Produce Farm Sales*, 335 F.3d 130 (2d Cir. 2003) ....................... 6

*In re Polar Music Int. AB,* 714 F.2d 1567 (Fed. Cir. 1983) ........................................................... 8

*In re Slokevage*, 441 F.3d 957 (Fed. Cir. 2006) ........................................................................... 5

*Kelly-Brown v. Winfrey*, 659 F. Appx. 55 (2d Cir. 2016) ............................................................. 7

*Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) ..................................................................................... 6

*Liebowitz v. Elsevier Science Ltd.*, 927 F. Supp. 688 (S.D.N.Y. 1996) ........................................ 8

*Mallis v. Bankers Trust Co.*, 717 F.2d 683 (2d Cir. 1983) ............................................................ 5

*Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, 18 Civ. 814, 2018 WL 2012875 (E.D.N.Y. Apr. 30, 2018) ............................................................................................................... 6, 7

*Papercutter, Inc. v. Fay's Drug. Co.*, 900 F.2d 558 (2d Cir. 1990) ............................................... 7

*Really Good Stuff, LLC v. BAP Inv'rs, L.C.*, 813 Fed. App'x 39 (2d Cir. 2020) ...................... 6, 7

*RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112 (2d. Cir. 2022) ............................................ 10

*Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395 (S.D.N.Y. 2011), *aff'd*, 462 Fed. Appx. 31 (2d Cir. 2012) ............................................................................................................... 9

*TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876 (7th Cir. 1997) .......................... 8

*Yellowbook Inc. v. Brandeberry*, 708 F.3d 837 (6th Cir. 2013) ....................................................... 8

**Statutes**

15 U.S.C. § 1052(e) ............................................................................................................................. 5

15 U.S.C. § 1052(f) ............................................................................................................................. 5

**Treatises**

McCarthy on Trademarks § 16.40 ..................................................................................................... 8

McCarthy on Trademarks § 18:43.50 ................................................................................................ 4

McCarthy on Trademarks § 29:8 ....................................................................................................... 9

## PRELIMINARY STATEMENT

The FDNY and FDNY Foundation Inc.'s (together, "FDNY Parties") supplemental brief in opposition to a preliminary injunction proffers a grab bag of arguments that universally miss their mark.

First, the FDNY Parties' reliance on municipal contracting case law cannot overcome the evidence of an implied license between Henriquez and the non-governmental FDNY Foundation, Inc. ("Foundation"), or the application of license estoppel against that independent, not-for-profit entity.

Second, the FDNY Parties' preoccupation with the MSOC Marks' alleged lack of secondary meaning in 2013 ignores controlling Second Circuit authority and this Court's prior determination that the FDNY Parties did not begin their infringement until 2022. It also disregards fundamental principles of trademark law requiring that goodwill in the developing MSOC Marks accrued to Henriquez – the original source of MSOC-branded events who controlled their quality nationally – alone.

Finally, the FDNY Parties fail to rebut the statutory presumption of validity accorded to the registered MSOC Mark as of 2019, or to this Court's prior determinations that both MSOC Marks are valid and that *all eight* likelihood of confusion *Polaroid* factors favor Henriquez.

The preliminary injunction should re-issue.

## ARGUMENT

1. **Licensee Estoppel Applies, at a Minimum, as to the Foundation**

License estoppel precludes the Foundation from challenging the MSCO Marks' validity based on that entity's status as Henriquez's former licensee. While the FDNY Parties cite various authorities concerning implied licenses and estoppel in contracts with municipal entities, those

cases are irrelevant to Henriquez's relationship with the Foundation, which is a non-governmental, not-for-profit corporation formally independent of the FDNY. S*ee* Third Am. Compl. (ECF 86) ¶ 5; Preliminary Injunction Evidentiary Hearing Transcript (ECF 83 and 84) ("Tr.") at 375.

The record contains overwhelming evidence demonstrating the Foundation's leading role – via Dr. Isaacs and its executive director Jean O'Shea – in requesting and approving use of Henriquez's MSOC Marks; administering, producing, organizing, and executing the annual FDNY-hosted conferences; and fundraising, marketing, and receiving all income related to ticket sales. For example:

- The Foundation's executive director, Jean O'Shea, testified that she was involved in and responsible for approving all aspects of the annual FDNY-hosted MSOC events. Tr. 377-78; *City of New York v. Henriquez*, 22 Civ. 3190, 2023 WL 2186348, *4-5 (S.D.N.Y. Feb. 23, 2023) (hereinafter "*Henriquez I*").

- At Dr. Isaac's request, Henriquez provided a list of outside MSOC fundraising contacts directly to the Foundation to support its FDNY-hosted MSOC marketing efforts. *Id.* at *4; Supp. Henr. Decl. Exh. L (ECF 54-1) (referencing "Susan" Wipper, who performed marketing work for the Foundation. Henr. Supp. Decl. (ECF 54) ¶ 6). At Dr. Isaac's request, Henriquez also helped the Foundation identify new conference sponsors. Henr. Supp. Decl. (ECF 54) ¶ 8 and Exh. P (ECF 54-5).

- Henriquez lobbied FEMA and state funding agencies to permit their grant funds to be used by regional disaster response teams specifically for MSOC-branded events, including the FDNY-hosted MSOC events. Henr. Supp. Decl. (ECF 54) ¶ 12. He did this in order to provide additional financial support the Foundation-hosted

- event. *Id.* ¶ 12 and Exh. Q (ECF 54-6).

- The Foundation handled the administrative side of the FDNY-hosted MSOC events, and O'Shea and the Foundation were intimately involved in deciding whether to host the FDNY-hosted MSOC events each year. *Henriquez I*, 2023 WL 2186348 at *4-7; Supp. Henr. Decl. Exh. O (ECF 54-4).

- Henriquez entered into the Donation Agreement with the Foundation, and he created the FDNY-hosted MSOC website, *i.e.*, www.fdnymsoc.com, to serve as the public face of the FDNY-hosted MSOC events and provide a ticketing portal for the events, specifically for the Foundation and its benefit. *Henriquez I*, 2023 WL 2186348 at *5; Henr. Decl. (ECF 49) ¶ 15, 21-22.

- Numerous public-facing Foundation documents featured Henriquez's MSOC Marks prominently as a source-identifier for the FDNY-hosted MSOC events. *See, e.g.*, Henr. Decl. Exh. D (ECF 49-4) at 4, 33, 48, 52 (referencing the Foundation's current website, www.fdnypro.org. *See* Malvasio Decl. (ECF 52-10) ¶ 5), 53.

- In text messages between Dr. Isaacs and Joseph Hernandez sent in late 2018, Dr. Isaacs refers to the Foundation as the key host organization for FDNY-hosted MSOC and the motivating factor for the FDNY Parties' possible decision to cease hosting the events in New York. *Henriquez I*, 2023 WL 2186348 at *7, 24.[1] Dr. Isaacs further agreed with Hernandez that the annual MSOC event could be produced outside of New York City, independently of the Foundation. *Id.*

- The FDNY Parties' initial brief in opposition to Henriquez's request for a

---

[1] *Henriquez I* indicates that these text messages were sent in late 2019, however the actual documents reflect that they were sent in late 2018. *Compare Henriquez I*, 2023 WL 2186348 at *24 *with* Hernandez Decl. (ECF 50) ¶ 23; Ex. B (ECF 50-2); and Exh. C (ECF 50-3).

preliminary injunction argued that the FDNY-hosted MSOC event had become "a very prestigious event associated with the . . . Foundation." *Id.* at *26 (quoting FDNY Opp. (ECF 52-1) at 4.).

As discussed at length in Henriquez's initial supplemental brief, *see* P.I. Supp. Br. (ECF 106) at 4-11, these facts demonstrate the Foundation's status as Henriquez's ex-licensee based on the "objective conduct of the parties." McCarthy on Trademarks § 18:43.50. *See also De Forest Radio Tel. & Tel. Co. v. Unites States*, 23 U.S. 236, 241 (1927) ("any language used by the owner . . . or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use . . . constitutes a license.").[2][3]

The FDNY Parties other arguments against licensee estoppel are equally meritless.

In asserting that the MSOC Marks were not capable of being licensed in 2013, the FDNY Parties confuse the question of whether the MSOC Marks were "protectible" in 2013 – *i.e.*, whether Henriquez would have been entitled to exclusive use of the MSOC Marks and could have enforced those rights against a potential competitor – with the separate question of whether cognizable (and licensable) property rights exist in a descriptive mark prior to it acquiring secondary meaning. The answer to the latter question – the only one relevant here – is clearly yes. The Trademark Act explicitly acknowledges that descriptive marks that have not yet obtained secondary meaning may

---

[2] The FDNY Parties' claim that Henriquez made statements contradicting his ownership in the MSOC Marks merely seeks to re-litigate the question of whether Henriquez organized MSOC-branded events prior to 2013. The Court has already found that he did, based on overwhelming documentary and testimonial evidence. *See Henriquez I*, 2023 WL 2186348 at *2-3, *11.

[3] The FDNY Parties' suggestion that such a license would violate the statute of frauds is incorrect. Not only is an implied license terminable at will, *see*, *e.g.*, *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 864 (C.D. Ill. 2013) ("The statute of frauds does not apply to an implied license because either party could have terminated the license within one year"); the evidence here shows that the FDNY Parties' agreement to host MSOC events had to be re-approved on an annual basis. *See Henriquez I*, 2023 WL 2186348 at *3 (quoting Tr. at 274).

still be "capable of distinguishing [an] applicant's goods or services" and are registrable on the USPTO's Supplemental Register. 15 U.S.C. § 1091(a). *See also* 15 U.S.C. §§ 1052(e) and (f); *In re Slokevage*, 441 F.3d 957, 958 n.1 (Fed. Cir. 2006) ("[T]he United States Patent and Trademark Office . . . maintains a Supplemental Register for marks 'capable of distinguishing applicant's goods or services and not registrable on the principal register.'"). And the FDNY Parties have no real response to the numerous courts – and Professor McCarthy's leading trademark treatise – holding that protectible trademark rights may be developed through use by a licensee. *See* P.I. Supp. Br. (ECF 106) at 11-12. The FDNY Parties' suggestion that these cases all involved written license agreements misses the point: either licensable property rights exist prior to secondary meaning, or they do not. And, of course: they do. If a written license agreement is capable of accruing goodwill and secondary meaning for the licensor, so must it be for a license that is implied by the parties' conduct.

Similarly, the FDNY Parties miss the point in arguing that Dr. Isaacs lacked authority to contract with Henriquez on behalf of the FDNY Parties. As already discussed in Henriquez's supplemental brief, *see id.* at 13-15, it was the Foundation, itself, through its own objective conduct and decision making, that requested, consented to, and used Henriquez's MSOC Marks. Dr. Isaacs was simply authorized to manage day-to-day operations on behalf of the Foundation and report relevant matters to O'Shea for approval. *See* Tr. at 362-64, 376-80. His knowledge of understandings and communications with Henriquez must be imputed to the Foundation for purposes of construing the legal significance of the Foundation's own conduct. *See Mallis v. Bankers Trust Co.*, 717 F.2d 683, 689 n.9 (2d Cir. 1983). And, of course, O'Shea personally received emails and documents that identified Henriquez as the source and creator of FDNY-hosted MSOC materials. *See Henriquez I*, 2023 WL 2186348 at *4-5. *See also, e.g.,* Henr. Decl.

Exh D (ECF 49-4) at 5, 47.

Finally, even if it were appropriate to apply here the balancing test for estoppel created in the patent context by *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), "courts have been more apt to bar challenges by [trademark] licensees, recognizing that the public interest in promoting challenges to the validity of trademarks, if indeed there is any, . . . is not nearly as weighty as in the patent area." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 425 (S.D.N.Y. 2019) (internal quotation marks omitted) (quoting *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 291-92 (S.D.N.Y. 2000), *aff'd*, 4 F. App'x 81 (2d Cir. 2001)). Indeed, "[t]he case law, in trademark cases, generally holds the public interest served by assuring the validity of a trademark as insufficient to overcome implied or express estoppel." *Id.* at 426. Thus, courts applying *Lear* in the trademark context "have generally precluded licensees from challenging the validity of a mark they have obtained the right to use." *Idaho Potato Comm. v. M. M. Produce Farm Sales*, 335 F.3d 130, 136 (2d Cir. 2003) (citing with approval *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329 (6th Cir. 1973) (holding that "the public interest in [trademarks] ... is not so great that it should take precedence over the rule of the law of contracts that a person should be held to his undertakings."))[4]

Contrary to the FDNY Parties' suggestion, license estoppel is commonly used offensively in the preliminary injunction context. *See*, *e.g.*, *Really Good Stuff, LLC v. BAP Inv'rs, L.C.*, 813 Fed. App'x 39, 43 (2d Cir. 2020); *Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, 18 Civ. 814, 2018 WL 2012875, *11 (E.D.N.Y. Apr. 30, 2018). Here, the FDNY Parties fail to identify any

---

[4] *Idaho Potato* considered whether estoppel should be applied in the context of a certification mark rather than a trademark. However, the Second Circuit explicitly stated that the key public interests in the trademark context are (a) preventing public confusion, and (b) the trademark owner's right to a monopoly over the use of its mark. *Idaho Potato Comm.*, 335 F.3d at 138. For the Second Circuit, these interests weighed in favor of enforcing estoppel. *Id.*

compelling public interest that might be served by allowing the Foundation, as an ex-licensee, to challenge the validity of Henriquez's marks. Consequently, the Foundation is estopped from challenging the MSOC Marks' validity, and likelihood of confusion is established as a matter of law.[5]

### 2. The FDNY Parties' Focus on Secondary Meaning in 2013 Ignores Controlling Second Circuit Law

The FDNY Parties fail to address the controlling Second Circuit precedent *Kelly-Brown v. Winfrey* and *Papercutter, Inc. v. Fay's Drug Co.* in arguing that Henriquez cannot prevent the FDNY Parties' from running competitive MSOC-branded events now simply because the MSOC Marks allegedly lacked secondary meaning in 2013, *i.e.*, when the FDNY Parties first hosted collaborative MSOC events with Henriquez. As those cases established, Henriquez need only show that the MSOC Marks acquired secondary meaning before his "competitor," *Papercutter, Inc.*, 900 F.2d 558, 564 (2d Cir. 1990), began its "alleged infringement." *Kelly-Brown*, 659 F. Appx. 55, 8 (2d Cir. 2016). Yet this Court specifically found that the FDNY Parties hosted the 2013 through 2019 events with Henriquez's "permission" and "participation," *Henriquez I*, 2023 WL 2186348 at *11, 18, 28, and that the FDNY Parties did not become Henriquez's competitors or begin their alleged infringement until 2022, after the MSOC Marks had acquired secondary meaning. *Id.* at *28. Rather, "all of the FDNY-hosted MSOC events prior to the FDNY-hosted 2022 and anticipated 2023 events were organized and developed by Mr. Henriquez, who had control over the MSOC reputation nationally." *Id.* at *27. These factual findings defeat the FDNY Parties' 2013 timing argument dispositively.

---

[5] The *Lear* test only concerns the application of estoppel against challenges to a mark's validity. *Lear* has no bearing on the automatic finding of irreparable harm that also accompanies an ex-licensee's continued use of the licensed mark without permission. *See Really Good Stuff, LLC*, 813 Fed. Appx. at 43; *Mitsubishi Motors N. Am. Inc*, 2018 WL 2012875 at *11 (collecting cases).

At its core, the FDNY Parties' 2013 timing argument urges the Court to find that if the FDNY Parties knowingly requested, accepted, and used Henriquez's descriptive trademarks with Henriquez's participation, permission, supervision, and control – but somehow not under the auspices of a formal licensing relationship, whether express or implied – then the goodwill generated by the parties' collaborative use of the MSOC Marks should accrue to the FDNY Parties either (a) separately and fragmented from, (b) jointly with, or (c) alone and instead of Henriquez. This position – which would create a "gotcha"-style landmine for unwitting owners of in-use-but-not-yet-protectible descriptive marks – flies in the face of basic principles of trademark law.

The "fundamental purpose of trademarks" is to "signify that all goods bearing the trademark come from or are controlled by a single, albeit anonymous, source" and to "signify that all goods bearing the trademark are of an equal level of quality." *Excell Consumer Prods. Ltd. v. Smart Candle LLC*, 11 Civ. 7220, 2013 WL 4828581, *23 (S.D.N.Y. Sep. 10, 2013). *See also* McCarthy on Trademarks § 16.40 ("It is fundamental that a trademark or service mark identifies a *single,* albeit anonymous, source."). "[W]hoever controls the quality of the goods marketed under the trademark is the source and therefore owns the trademark." *Liebowitz v. Elsevier Science Ltd.*, 927 F. Supp. 688, 696 (S.D.N.Y. 1996) (citing *In re Polar Music Int. AB,* 714 F.2d 1567, 1571 (Fed. Cir. 1983)). For these reasons, too, joint ownerships of trademarks is strongly disfavored, since "[b]y their nature, trademarks derive their value from exclusively identifying a particular business." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 845 (6th Cir. 2013) (citing McCarthy on Trademarks § 16:40). Finally, ownership over the goodwill-accruing, but as-yet-unregistered MSOC Marks could not have transferred from Henriquez to the FDNY Parties without "strong evidence to establish an assignment," such as "clear and uncontradicted oral testimony." *Doeblers' Pennsylvania Hybrids v. Doebler*, 442 F.3d 812, 822 (3d Cir. 2006) (quoting

*TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997)). No such evidence exists here.

Absent a formal license agreement between the parties, therefore – *i.e.*, if the Court finds for some reason that an implied license was never created – the facts at bar appear analogous to the situation of manufacturers and distributors of branded products. In that context, "in the absence of an agreement between the parties regarding ownership of the trademark, [courts] apply the presumption that the manufacturer has superior rights to the trademark." *Excell Consumer Prods. Ltd.*, 2013 WL 4828581 at *23. *See also Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 403 (S.D.N.Y. 2011), *aff'd*, 462 Fed. Appx. 31 (2d Cir. 2012) (same). However, only an *exclusive distributor* may rebut this presumption. *See Excell Consumer Prods. Ltd.*, 2013 WL 4828581 at *23 (citing *Tecnimed SRL*, 763 F. Supp. 2d at 403; McCarthy on Trademarks § 29:8). Here, Henriquez's role was akin to a manufacturer: he was the originator and first user of the MSOC Marks, he controlled the quality of MSOC-branded training events, and he provided those events to the public nationally by partnering with various local host "distributor" organizations. Given that the FDNY Parties were not the exclusive hosts of MSOC-branded events – and thus could not control the quality of the MSOC-branded services that Henriquez delivered to the public in other places via other host organizations – the FDNY Parties cannot rebut the presumption that Henriquez owns the MSOC Marks' goodwill. *See id.* ("Moreover, [defendant] did not have any means of controlling or maintaining the quality of the goods that [plaintiff] sold independently to other retailers. [Plaintiff] is the only company that could ensure an equal level of quality under these circumstances, because [Plaintiff] is the source of all [the products] sold in the U.S.").

### 3. The FDNY Parties Fail to Rebut Validity or Likelihood of Confusion

Finally, the FDNY Parties fail to rebut the presumption of trademark validity accorded by

the MSOC Mark's registration in 2019, or the actual determination of validity of both MSOC Marks made by the Court in its prior option. *See Henriquez I*, 2023 WL 2186348 at *14-15, 18.[6]

Nor have the FDNY Parties mustered anything more than a half-hearted attempt to overcome the Court's prior finding that all eight *Polaroid* confusion factors support Henriquez. *See id.* at *15-23. The FDNY Parties cite no record facts to support their argument, and their suggestion that the MSOC Marks' lack strength in the relevant market is undermined by the Court's prior finding to the contrary. *See id.* at *18. *See also RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 124 (2d. Cir. 2022) (observing that a senior user's showing of acquired strength may support it in the first *Polaroid* factor, even where the mark at issue is not inherently strong).[7]

## CONCLUSION

For all the foregoing reasons, Henriquez respectfully requests that the Court grant his Motion for a Preliminary Injunction and grant such other relief as the Court deems just and proper.

DATED: August 14, 2024
New York, New York

**FLETCHER LAW, PLLC**

By: _____
Jordan Fletcher
234 Fifth Avenue, 2nd Floor
New York, NY 10001
jordan@fletcherlaw.co
(212) 320-8945

---

[6] The FDNY Parties' claim that Henriquez offered no evidence of secondary meaning appears to confine itself to the pre-2013 period.

[7] The FDNY Parties persist in falsely characterizing themselves as a "prior user" of the MSOC Marks. In trademark parlance, the term "prior user" is synonymous with "senior user," *i.e.*, the first person to use a mark in commerce, and both are commonly used in contrast to the terms "junior user" and "subsequent user." *See, e.g., Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78 (2d Cir. 1988); *Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991); *Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1569 (Fed. Cir. 1990); *Enterprises Rent-A-Car v. Advan. Rent-A-Car*, 330 F.3d 1333, 1342 (Fed. Cir. 2003).

*Attorneys for Defendant and
Counterclaim Plaintiff Juan Henriquez*