

**FLETCHER LAW, PLLC**
234 Fifth Avenue, 2nd Floor • New York, NY 10001
T: (212) 320-8945 • F: (347) 983-0046
www.fletcherlaw.co

Jordan Fletcher, Principal

April 26, 2025

**VIA ECF**

Hon. Peggy Kuo
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 11C South
Brooklyn, NY 11201
Kuo_Chambers@nyed.uscourts.gov

  Re: *City of New York, et al. v. Henriquez,* 22 Civ. 3190-KAM-PK (EDNY)
    Opposition to Letter Motion re Disclaimer

Dear Judge Kuo,

  I write on behalf of defendant Juan Henriquez to oppose Plaintiffs' letter motion of April 23, 2025 seeking permission to remove the Court-ordered disclaimer from the FDNY Foundation, Inc.'s ("Foundation") website.

  Since the pre-motion conference on April 11 concerning Mr. Henriquez's proposed contempt motion, the FDNY and Foundation (together, "FDNY Parties") have maintained a strategy of delay, half-compliance, and obstruction. Despite the preliminary injunction and this Court's directions, the FDNY Parties have continued to leverage potential confusion arising from their ongoing use of the MSOC Marks **in the days leading up to their competing conference, which runs from April 24 to 27, 2025**.

1. <u>Disclaimer</u>

  Notwithstanding the Court's direction that the FDNY Parties should post a clear disclaimer on the Foundation's website to counteract potential past and present confusion caused by the Foundation's use of the MSOC Marks in likely violation the preliminary injunction, *see* Apr. 11, 2025 Transcript ("Tr."), <u>Exhibit 1</u>, at 5:19-25, 8:1-7, 17:22, 26:1-22, and 28:13-25:

  a. <u>First</u>, the FDNY Parties delayed posting a disclaimer for most of the week of April 14, while simultaneously denying any violation of the injunction and suggesting that they should not have to post a disclaimer at all;

  b. <u>Second</u>, when the Foundation finally did post a disclaimer on April 17, they buried it at the bottom of a long scroll website, thereby making it unlikely that the disclaimer would be

viewed by anyone or remedy confusion. *See* **Exhibit 2**.

c. <u>Third</u>, when Henriquez objected that the disclaimer's location frustrated the purpose of this Court's direction, the FDNY Parties refused to reposition the disclaimer, opting instead to bold its font without any further consultation. *See id.*

d. <u>Now</u>, following Henriquez's renewed objection to the disclaimer's location, the FDNY Parties have unilaterally abandoned the 30-day meet-and-confer period imposed by the Court, *see* Tr. at 30:13-19, and seek to walk back the disclaimer requirement entirely.

2. **<u>Public Website and Social Media Posts</u>**

Notwithstanding the Court's instruction that FDNY Parties should remove all remaining public website posts containing the MSOC Marks, *see* Tr. at 6:11-22 ("SINGLETON: [T]hose were flyers that promoted prior conferences. There's no reason to leave them up and they were going to take them down. And I'll confirm it. . . .; COURT: So that[,] if it hasn't happened, that will happen. The agreement is that the flyers will be taken down.; SINGLETON: I'll take the flyers down."), <u>on April 16, the FDNY Parties refused to take down the remaining public website posts</u>. *See* **Exhibit 3** ("We do not see any reason to disable those references at this point in time.")

As of April 23, the same six posts containing the MSOC Marks that were featured on the Foundation's website prior to April 11 remained in place. *See* **Exhibit 4**.[1] The FDNY Parties have also refused to remove numerous instances of the MSOC Marks that are publicly viewable on the Foundation's Instagram and Facebook accounts.

3. **<u>Metadata Keywords</u>**

After denying in their March 13 pre-motion letter that MSOC-related metatags were embedded in the Foundation's website, the FDNY Parties re-asserted by email immediately after

---

[1] The significance of the Foundation's historical web posts is best understood within the broader context of search engine optimization ("SEO"), which consists of various techniques aimed at causing Google and other search engines to rank a website highly. Consider an analogy: you build a house on formerly vacant land along a quiet road in the country. How do you ensure your mail gets delivered? Some steps you take may be visible to passers-by – *e.g.*, installing a mailbox with your street address, putting up yard signs with your family name – while others may not be publicly apparent from the road – *e.g.*, registering with the post office, having your teenager sit in the basement and send periodic reminder text messages to the mail truck driver.

For purposes of this discussion, a website URL combines features of the mailbox and official registration, metadata keywords are like your teenager in the basement, and public web posts containing the MSOC Marks are like yard signs. Even if the yard signs were installed a decade ago, when combined with other SEO tools, they help confirm to search engines that this is the right house for mail addressed to "MSOC."

the April 11 conference that the "Foundation does not use metatags or have the technical knowledge to manipulate the Google search engine."

Yet, when confronted with overwhelming evidence of the Foundation's use of MSOC-related metatags on *hundreds* of sub-pages on the Foundation's website, *see* **Exhibit 5**, the FDNY Parties reversed course and averred that the keywords had been removed.

However, the FDNY Parties appear to have failed (or intentionally declined) <u>to manually clear the cache on the Foundation's website</u>, which means that Google will not quickly recognize any changes that have recently been made to the site's metadata. As a result, despite claiming to have deleted MSOC-related metatags as of April 17, the Foundation's competing event (and its Eventbrite.com ticketing page) currently remain in the top results for the searches "FDNY medical special operations conference," "fdny msoc," and "medical special operations conference. *See* **Exhibit 6**.[2]

**This delay in effectuating changes to Foundation's website is particularly egregious given that the FDNY Parties are hosting their competing event at this very moment. Regardless of this Court's ultimate decision on the disclaimer, the FDNY Parties' conduct since the February 19 injunction means that the damage is done for 2025.**

4. <u>URL Redirects</u>

Although the FDNY Parties ultimately did render their old URL redirects inactive, they initially asserted on April 16, falsely, that they were not required to disable the URLs and that they would not do so. *See* Tr. at 28:19-24 ("COURT: So I'm now directing the city to have the conversations to figure this out . . . so there's no confusion through something . . . as clear as making sure the code doesn't redirect in a way that it's not supposed to happen.").

5. <u>Conclusion</u>

While it "need not be established that [a] violation was willful" in order to hold a party in contempt of court, *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004), there is substantial evidence here that the FDNY Parties continue to engage in stall tactics and bad faith non-compliance with Judge Matsumoto's and this Court's instructions. The FDNY Parties' pending appeal does not lessen their obligation to comply with court orders, *see id.* at 656. Nor does counsel's claim that he is not tech-savvy affect his obligation to "diligently attempt[] to comply [with an order] in a reasonable manner" or to "substantiate [any] claimed inability [to comply] plainly and unmistakably." *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984) (quotation marks omitted).

---

[2] The FDNY Parties' insinuation that these search results may be caused by the disclaimer, itself – rather than an uncleared website cache – is incorrect. Indeed, the current search results are similar to those obtained prior to April 11. *See* **Exhibit 6**.

      We respectfully submit that the FDNY Parties' request to delete the disclaimer should be denied and – in light of the FDNY Parties' unilateral abandonment of the meet-and-confer process – that Henriquez be granted leave to proceed with his proposed contempt motion.

Respectfully submitted,

*/s/ Jordan Fletcher*

Jordan Fletcher