

**FLETCHER LAW, PLLC**
234 Fifth Avenue, 2nd Floor • New York, NY 10001
T: (212) 320-8945 • F: (347) 983-0046
www.fletcherlaw.co

Jordan Fletcher, Principal

June 24, 2025

**VIA ECF**

Hon. Peggy Kuo
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 11C South
Brooklyn, NY 11201
Kuo_Chambers@nyed.uscourts.gov

> Re:  *City of New York, et al. v. Henriquez,* 22 Civ. 3190-KAM-PK (EDNY)
> Joint Status Letter re Henriquez's Proposed Motion for Contempt

Dear Judge Kuo,

I write on behalf of defendant Juan Henriquez, and with the consent of counsel for the FDNY and FDNY Foundation, Inc. (together "FDNY Parties") to update the Court on the status of Mr. Henriquez's proposed motion for contempt. Because the parties have reached an impasse, I am including the FDNY Parties' position in separate part of this letter.

## Mr. Henriquez's Position

First, the parties have reached an impasse over the FDNY Parties' refusal to take down numerous social media posts that use the MEDICAL SPECIAL OPERATIONS CONFERENCE and MSOC trademarks (together "MSOC Marks") in connection with the FDNY Parties' training events.

As the Court will recall, Judge Matsumoto's February 19, 2025 preliminary injunction ("Injunction") prohibits the FDNY Parties from using the MSOC Marks without Mr. Henriquez's permission:

> (1) in connection with charitable fundraising, special events, training courses, and other goods or services; and/or
>
> (2) in any manner that is likely to cause public confusion that such services or goods are produced, provided, sponsored, authorized by, or connected to Mr. Henriquez.

*City of New York v. Henriquez,* 768 F. Supp. 3d 388, 418 (E.D.N.Y. 2025).

1

The plain language of this Injunction requires the FDNY Parties to take down all public social media posts that use the MSOC Marks in connection with training events, regardless of whether those posts relate to current or historical events. A sample of the FDNY Parties' currently published posts, documented via screen-capture on March 11, 2025, is attached hereto as **Exhibit A**.

The FDNY Parties have consistently refused to remove any such social media posts, arguing (i) that they are beyond the scope of the Injunction, and (ii) that it would be too burdensome for the FDNY Parties to have to search through their own social media accounts and delete violative posts.

As a compromise solution, Henriquez proposed on June 6, 2025 that the FDNY Parties should remove **just two specific Instagram posts**, attached hereto as **Exhibit B**, along with their analogues, if any, on Facebook and X (*i.e.*, Twitter). Henriquez objects to these posts, in particular, both because their use of the MSOC Marks in connection with special events and training courses clearly violates the Injunction, but also because they contain the following language:

> "[T]he FDNY Medical Special Operations Conference (FDNY MSOC) has been renamed as the FDNY Search & Rescue Field Medicine Symposium (SRFM)."

This text is likely to cause consumers to believe that the FDNY Parties' new "SFRM" conference is a continuation of the same event that the FDNY Parties previously hosted, just with a new name. This impression of continuity is false because the producers of the FDNY-hosted MSOC events, *i.e.*, Mr. Henriquez and his non-FDNY MSOC colleague Joseph Hernandez, are no longer affiliated with events hosted by the FDNY Parties. In reality, the FDNY Parties' SFRM conference is a <u>new</u> event, produced by a new organization, *i.e.*, the FDNY Parties. The offending text above also potentially causes confusion by suggesting that <u>all</u> MSOC-branded events have been renamed "SFRM" events. The impression is false, because MSOC events continue to be held elsewhere around the country, just not in New York hosted by the FDNY Parties.

By maintaining all these public social media posts, the FDNY Parties seek to leverage their past association with the MSOC Marks and exploit the consumer goodwill that inheres in those marks for the FDNY Parties' own benefit. This is plainly prohibited by the Injunction.

<u>Second</u>, the parties have reached an impasse over the FDNY Parties' refusal to delete language on their website and social media accounts referring to their 2025 SFRM event as the "12th Annual" SFRM event. *See* **Exhibit C**. This formulation is false and misleading because the FDNY Parties only began holding "SFRM" events in 2023. Like the social media posts objected to above, the FDNY Parties use of "12th Annual" implies that the SFRM events are a continuation of prior MSOC events, whereas, in fact, the SFRM is an entirely new event that has no affiliation with MSOC-branded events.

<u>Third</u>, Mr. Henriquez renews his request to file a contempt motion based upon the FDNY Parties' multiple violations of Injunction since February 19, 2025. Mr. Henriquez intends to renew his request for an award of attorney's fees for the time and effort it has taken to resolve the issues

2

first raised in his March 5 pre-motion letter, and subsequently discussed in his April 26 letter and herein.

An award of fees is appropriate because (i) the FDNY Parties continue to resist fixing the violations identified above, and (ii) it has now taken more than three months of litigation and negotiation – including multiple letters to the Court, two pre-motion conferences, and numerous emails and phone calls between counsel, to get the FDNY Parties even to partially resolve their violations.

Over the past three months, Mr. Henriquez and his counsel have had to wrestle with the FDNY Parties to get them – eventually, and only with the Court's repeated prodding – to take the following remedial steps:

- Place a disclaimer prominently at the top of the Foundation's SFRM event website. As the Court will recall, after the Court instructed the FDNY Parties to post a disclaimer during the April 11 pre-motion conference, the FDNY Parties initially denied that they were obliged to do so, and then sought to bury the disclaimer at the very bottom of their SFRM website. (*See* ECF 119, 119-2). **The FDNY Parties' delay in complying in good faith meant that there was no easily-visible disclaimer on the SFRM website until *after* their event on April 24-27 had already passed**.

- Disable and cease various "search engine optimization" practices whose only conceivable purpose was to cause search engines to redirect MSOC-related queries to the Foundation's website and SFRM events. These practices included: (1) preserving MSOC-related metadata keywords in hundreds of sub-pages on the Foundation websites (*see* ECF 119-5); (2) preserving MSOC-related metadata "categories" in the architecture of the Foundation websites; and (3) preserving at least six public webpages referencing the MSOC Marks on the Foundation website (*see* ECF 119-4). **These practices caused the Foundation's website and competing SFRM event to rank highly in Google search results for MSOC-related queries in the days and weeks leading up to the April 24-27 event**. (*See* ECF 119-6.)

- Cease the Foundation's use of the MSOC Marks in its website URL addresses, which redirected visitors to the current SFRM event page. **These URLs had the potential to cause confusion for visitors who, upon clicking on MSOC-related links in older MSOC publicity and educational materials, were taken to the Foundation's website and the 2025 SFRM event page**.

- Provide documentation of the steps actually implemented by Foundation's information technology staff to remedy the above violations of the Injunction.

While a showing of willfulness is <u>not</u> required for the Court to hold a party in contempt, *see Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004), we believe that the FDNY Parties repeated delay, intransigence, and frustration of

Judge Matsumoto's and this Court's instructions and intentions provides ample evidence of bad faith. The FDNY Parties have shown themselves to be consistently unwilling and uninterested in complying with the Injunction in a diligent manner.

We respectfully submit that the Court should not allow the FDNY Parties' disregard of the Orders and instructions of both Judges on this case to go uncensured.

**The FDNY Parties' Position (provided by their counsel)**

The FDNY Parties have been in compliance with the Injunction since it was issued on February 19, 2025. As discussed in the FDNY Parties' response to Henriquez's initial letter requesting a pre-motion conference regarding alleged contempt, (ECF 114), neither the FDNY nor the Foundation have used any MSOC mark since the first injunction was issued on February 23, 2023 (ECF 71).

Henriquez's initial complaints were largely related to the use of legacy URLs which re-directed traffic to the landing page for the SRFM conference, and the alleged use of metadata or other keywords that could have affected search engine results. Neither of these are a "use in commerce" of the marks under binding Second Circuit precedent. *See 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234 (2d Cir. 2024); *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 408 (2d Cir. 2005) (citing *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003) and *U-Haul International, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723 (E.D. Va. 2003)). Nevertheless, in an effort to engage in good-faith to meet Henriquez's requests, the FDNY Parties disabled the legacy URLs, removed any internal categories or tags on historic articles that used any MSOC mark, and placed a disclaimer on the landing page for the 2025 SRFM Symposium. When Henriquez argued that this was still insufficient to resolve his concerns regarding the placement of the Foundation's website in Google search results, the FDNY Parties agreed to take the unprecedented and unnecessary step of removing all historic articles referencing past FDNY MSOC events from its website.

At each step that the FDNY Parties attempted to demonstrate good faith by making these changes, they have been met with new and more far-reaching requests. After the FDNY Parties agreed to completely remove references to historic conferences from its own website, Henriquez now demands that FDNY remove years-old social media posts referencing prior events, and demands that they remove even social media posts promoting the SRFM Symposium that are not even arguably covered by the Injunction. These requests are baseless, and Henriquez's pattern of behavior over the course of these negotiations suggest that compliance with this request will only lead to further requests even more far-afield from the requirements of the Injunction.

<u>First</u>, the social media posts referred to in Exhibits A and B are over two years old, some going back to 2017.

The posts in Exhibit A were all made before the Court issued its first Injunction. They promote events that took place between 2017-2022, and cannot possibly cause any confusion that any such events are currently taking place at FDNY. These are exactly the kind of historic

documents that the parties discussed at the April 11 hearing and which the Court agreed does not constitute use of the marks, but merely "historical linkage." *See* Transcript (ECF 117 at 18:4-13; 26:11-14 ("[I]t's hard to break those linkages if it exists in a historical article. It's just there. You know? The internet is forever.")). Additionally, combing all social media pages for any references to conferences held from 2013 through 2022 poses an unreasonable and unnecessary burden on the FDNY Parties' technical support and/or social media staff.

The two posts contained in Exhibit B were issued shortly after the first Injunction to communicate to conference-goers, who had already signed up and paid to participate in a conference they knew to be called MSOC, that the name was being changed to SRFM. The posts accurately communicate to the audience that, while the FDNY conference would be operating under a different name, the basic content of the conference would not be changing. Far from causing confusion that the events are somehow associated with Henriquez's events, they in fact clarify that these events are completely separate and operating under a separate name.

Second, the FDNY Parties' use of an annual designation in referring to its SRFM Symposium merely reflects the fact that FDNY has been hosting annual conferences since 2013. No MSOC marks appear anywhere in the image in Exhibit C, or anywhere else on the Foundation's website (other than in the disclaimer, now prominently displayed at the top of the SRFM landing page at Henriquez's request), nor on any social media posts since 2023. The webpage for the 2025 Symposium accurately states that this year was the 12th time that FDNY has hosted an annual event on Randall's Island producing content for special operations professionals in the medical field. It is hard to see how these posts that make no mention of the MSOC marks nor contain any reference to any other MSOC events could possibly be said to violate the Injunction.

Third, there is no basis for Henriquez's proposed motion for contempt or for the award of attorney's fees. As discussed above, the FDNY Parties have never been out of compliance with the Injunction. Nevertheless, at this Court's instruction, the FDNY Parties have engaged in good-faith negotiations with Henriquez over the last three months to resolve his ever-expanding concerns. As Henriquez notes above, the FDNY Parties have taken all the steps that Henriquez requested, short of his most recent request to remove historic social media posts. The FDNY Parties added a disclaimer using the language and placement that Henriquez requested, took all steps that he requested to remove any possible meta-data or internal tagging that could have affected search-engine results, disabled redirects from historic URLs, and went well beyond their obligations by removing all historic references to MSOC conferences from its website.

(continued on next page)

Far from demonstrating bad-faith on the part of the FDNY Parties, this demonstrates exactly how far they have gone to comply with Henriquez's requests. The FDNY Parties believe that there was never any basis for a motion for contempt, as discussed in their initial response, (ECF 114), but this consistent cooperation with Henriquez's ever-increasing demands demonstrates the FDNY Parties' willingness to go well beyond its legal obligations to avoid conflict. At this point, it is Henriquez who is acting unreasonably by refusing to accept any steps that the FDNY Parties make and increasing his requests after every concession.

***

Respectfully submitted,

*/s/ Jordan Fletcher*

Jordan Fletcher