UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

CITY OF NEW YORK, by and through the
FDNY, and the FDNY FOUNDATION, INC.,

                              Plaintiffs, :

                 v.

JUAN HENRIQUEZ,

                       Defendant. :

        ECF CASE
        22-cv-03190-KAM-PK

-------------------------------------------------------------------X

JUAN HENRIQUEZ,

              Counterclaim Plaintiff, :

                 v.

CITY OF NEW YORK, by and through the
FDNY, the FDNY FOUNDATION, INC., and
GERALD SINGLETON,

             Counterclaim Defendants. :

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS

MURIEL GOODE-TRUFANT
Corporation Counsel
   of the City of New York
Attorneys for Plaintiffs and
   Counterclaim Defendants
City of New York
100 Church Street, Room 20-093
New York, New York 10007
Tel (212) 356-2036
Cell: (917) 734-7906; (646) 830-1066
gsinglet@law.nyc.gov

Of Counsel:
   Gerald E. Singleton
   Gavin Mackie

## TABLE OF CONTENTS

Page

Preliminary Statement.................................................................................................1

Relevant Factual Allegations ....................................................................................3

ARGUMENT ...............................................................................................................6

I.   THE FACC DOES NOT CONTAIN PLAUSIBLE FACTUAL
     ALLEGATIONS CONCERNING THE MATERIAL ELEMENTS OF EACH
     OF THE ALLEGED COUNTERCLAIMS AND IT SHOULD BE
     DISMISSED IN ITS ENTIRETY ................................................................... 6

     Legal Standard ................................................................................................ 6

II.  HENRIQUEZ HAS NOT PLAUSIBLY ALLEGED THAT HE  HAS
     STANDING TO ASSERT TRADEMARK CLAIMS AS AN OWNER AND
     USER OF THE MSOC MARKS ................................................................... 9

III. HENRIQUEZ HAS FAILED TO JOIN MEMBERS OF THE MEDICAL
     SPECIAL OPERATIONS COMMUNITY WHO ARE NECESSARY
     PARTIES UNDER FED. R. CIV. P. 19 ...................................................... 11

IV.  HENRIQUEZ HAS FAILED TO ALLEGE PLAUSIBLE CLAIMS FOR
     TRADEMARK INFRINGEMENT .............................................................. 13

V.   THE WHISTLEBLOWER RETALIATION COUNTERCLAIMS ARE
     FACTUALLY IMPLAUSIBLE ................................................................... 15

     A. The First Amendment Whistleblower Retaliation Claim Lacks Plausible
        Factual Allegations Concerning the Material Elements of the Claim ..................15

        i.   Henriquez was not speaking as a citizen on a matter of public concern........ 15

        ii.  There are no allegations regarding any adverse employment action.............. 18

        iii. The Counterclaims do not plausibly allege a causal connection ................... 19

     B. There Is No Private Right of Action for the Pendant Whistleblower
        Retaliation Claim Under The New York City Administrative Code....................20

VI.  THE DOCTRINE OF ABSOLUTE IMMUNITY BARS CLAIMS AGAINST
     ACC SINGLETON BASED ON HIS CONDUCT AS THE CITY'S
     COUNSEL ................................................................................................... 21

CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abkco Music, Inc. v. Sagan,*
   50 F.4th 309 (2d Cir. 2022) .................................................................................13

*Airday v. City of New York,*
   406 F.Supp.3d 313 (S.D.N.Y. 2019)....................................................................14

*Alcon Vision, LLC v. Lens.com, Inc.,*
   18-cv-407, 2022 WL 1665453, 2022 U.S. Dist. LEXIS 94031 (E.D.N.Y. May
   25, 2002) ...............................................................................................................11

*Anderson v. Creighton,*
   483 U.S. 635 (1987)..............................................................................................22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...........................................................................................6, 7

*Barrett v. United States,*
   798 F.2d 565 (2d Cir. 1986).................................................................................21

*Batyreva v. New York City Dept. of Educ.,*
   19 Misc. 3d 1128[A], 866 N.Y.S.2d 90, 2008 NY Slip Op 50928[U], 2008
   WL 1932224 (Sup. Ct. N.Y. Cnty.), rev'd on other grounds, 57 A.D.3d 322,
   869 N.Y.S.2d 440 (1st Dept. 2008) .....................................................................20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...........................................................................................6, 7

*Benvenisti v. City of New York,*
   No. 04 Civ. 3166 (JGK), 2006 WL 2777274, 2006 U.S. Dist. LEXIS 73373
   (S.D.N.Y. Sep. 23, 2006) .....................................................................................17

*Bradley v. City of New York,*
   No. 14-cv-4289, 2016 WL 1491017, 2016 U.S. Dist. LEXIS 34941 (E.D.N.Y.
   Mar. 16, 2016).......................................................................................................20

*Brass v. American Film Technologies, Inc.,*
   987 F.2d 142 (2d Cir. 1993)...................................................................................7

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002)...................................................................................7

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*,
   444 F.3d 158 (2d Cir. 2006)..................................................................19

*Connick v, Myers*,
   461 U.S. 138 (1983)....................................................................15, 16

*Davis ex rel. Davis v. United States*,
   343 F.3d 1282 (10th Cir. 2003) ....................................................12, 13

*Diesel v. Town of Lewisboro*,
   232 F.3d 92 (2d Cir. 2001).................................................................15

*Dudzik v. City of New York*,
   No. 01 Civ. 2450 (NRB), 2003 WL 203226, 2003 U.S. Dist. LEXIS 1287
   (S.D.N.Y. Jan. 21, 2003)....................................................................16

*El-Bey v. New York*,
   No. 12-CV-2385, 2012 WL 1902268, 2012 U.S. Dist. LEXIS 73330
   (E.D.N.Y. May 24, 2012) ..................................................................21

*Fabbricante v. City of New York*,
   No. 01-CV-5575 (CPS), 2002 WL 34438898, 2002 U.S. Dist. LEXIS 27815
   (E.D.N.Y. Nov. 12, 2002) ..................................................................20

*Giles v. Repicky*,
   511 F.3d 239 (2d Cir. 2007)...............................................................22

*Grillo v. N.Y. City Transit Auth.*,
   291 F.3d 231 (2d Cir. 2002)...............................................................14

*Halebian v. Berv*,
   644 F.3d 122 (2d Cir. 2011)................................................................7

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)..........................................................................22

*Harris v. New York State Dep't of Health*,
   202 F. Supp. 2d 143 (S.D.N.Y. 2002)..................................................8

*Healy v. City of New York Dep't of Sanitation*,
   No. 04 Civ. 7344 (DC), 2006 WL 3457702, 2006 U.S. Dist. LEXIS 86344
   (S.D.N.Y. Nov. 22, 2006) (Denny Chin, J.) ........................................20

*Jeune v. Crew*,
   2017 WL 4357382 ............................................................................19

*JFK Holding Co., LLC v. City of New York*,
   68 A.D.3d 447 (1st Dep't 2009) .........................................................14

*Johnson v. City of New York,*
 No. 16-cv-2879, 2019 U.S. Dist. LEXIS 95418, 2019 WL 2393716 (E.D.N.Y.
 June 6, 2019) ........................................................................................................................20

*Johnson v. Ganim,*
 342 F.3d 105 (2d Cir. 2003) ................................................................................................15

*Kassner v. 2nd Ave. Delicatessen Inc.,*
 496 F.3d 229 (2d Cir. 2007) ..................................................................................................7

*Klein v. City of New York,*
 No. 10 Civ. 9568 (PAE) (JLC), 2011 U.S. Dist. LEXIS 125375, 2011 WL
 5248169 (S.D.N.Y. Oct. 28, 2011) ......................................................................................20

*L-7 Designs, Inc. v. Old Navy, LLC,*
 647 F.3d 419 (2d Cir. 2011) ..................................................................................................6

*Mandell v. Cnty. of Suffolk,*
 316 F.3d 368 (2d Cir. 2003) ................................................................................................19

*Mangiafico v. Blumenthal,*
 471 F.3d 391 (2d Cir. 2006) ...........................................................................................20, 21

*Martir v. City of New York,*
 No. 07 Civ. 7922 (LTS), 2009 WL 2191332, 2009 U.S. Dist. LEXIS 64925
 (S.D.N.Y. July 23, 2009) .....................................................................................................17

*Miller v. Lazard Ltd.,*
 473 F. Supp. 2d 571 (S.D.N.Y. 2007) ...................................................................................8

*Morris v. Lindau,*
 196 F.3d 102 (2d Cir. 1999) ................................................................................................15

*Nachmenson v. Gluck,*
 No. 22-CV-627, 2022 WL 1093220, at *3, 2022 U.S. Dist. LEXIS 67484
 (E.D.N.Y. Apr. 12, 2022) .....................................................................................................21

*Palm Beach Strategic Income v. Stanley P. Salzman, P.C.,*
 No. 10-CV-261 (JS) (AKT), 2011 WL 1655575, 2011 U.S. Dist. LEXIS
 46867 (E.D.N.Y. May 2, 2011) .............................................................................................8

*Rapoport v. Asia Electronics Holding Co., Inc.,*
 88 F. Supp. 2d 179 (S.D.N.Y. 2000) .....................................................................................8

*Reynolds v. Banks,*
 12-cv-11664, 2012 WL 2524332, 2012 U.S. Dist. LEXIS 91064 (E.D. Mich.
 June 29, 2012) ......................................................................................................................12

*Rieger v. Drabinsky,*
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ......................................................................9

*Rolon v. Henneman,*
    517 F.3d 140 (2d Cir. 2008) ..................................................................................7

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007) ..................................................................................8

*Sazerac Company, Inc. v. Falk,*
    861 F. Supp. 253 (S.D.N.Y. 1994) ........................................................................8

*Sheppard v. Beerman,*
    317 F.3d 351 (2d Cir. 2003) ................................................................................15

*Smith v. Local 819 I.B.T. Pension Plan,*
    291 F.3d 236 (2d Cir. 2002) ..................................................................................7

*Spear v. West Hartford,*
    954 F.2d 63 (2d Cir. 1992) ..................................................................................21

*Spinelli v. NFL,*
    903 F.3d 185 (2d Cir. 2018) ................................................................................14

*Stephens v. Trump Org. LLC,*
    205 F. Supp. 3d 305 (E.D.N.Y. 2016) ..................................................................7

*Thomas v. New York City Dept. of Educ.,*
    No. 09-CV-5167-KAM-ST, 2019 WL 13180922, 2019 U.S. Dist. LEXIS
    29668 (E.D.N.Y. Feb. 22, 2019*), report and recommendation adopted and*
    *complaint dismissed,* 2019 U.S. Dist. LEXIS 40910 (E.D.N.Y. Mar. 12, 2019) ....................19

*Walczyk v. Rio,*
    496 F.3d 139 (2d Cir. 2007) ................................................................................22

*Wells Fargo Bank N.A. v. Wrights Mill Holdings, LLC,*
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..................................................................7

*Yourman v. Wildlife Conservation Soc'y,*
    No. 24-CV-337(EK)(LB), 2024 WL 4198501, 2024 U.S. Dist. LEXIS 165784
    (E.D.N.Y. Sept. 15, 2024) ......................................................................................7

**Statutes**

Code § 12-113 ....................................................................................................1, 19, 20

Trademark Act Section 2(f) ................................................................................1, 2

Trademark Act Sections 32 and 43(a), 15 U.S.C. §§ 1114 and 1125(a) ..........................1

**Other Authorities**

First Amendment ........................................................................................... *passim*

Fed. R. Civ. P. 4(m) ...............................................................................................3

Fed. R. Civ. P. 12(b)(1) .........................................................................................1

Fed. R. Civ. P. 12(b)(4) .........................................................................................3

Fed. R. Civ. P 12(b)(6) ..............................................................................2, 6, 7, 8

Fed. R. Civ. P. 19 ....................................................................................1, 11, 12

Fed. R. Civ. P. 19(a) .............................................................................................11

Fed. R. Civ. P. 19(a)(1)(A) ..................................................................................11

Fed. R. Civ. P. 19(a)(1)(B) ..................................................................................11

Fed. R. Civ. P. 19(a)(2) ........................................................................................11

Fed. R. Evid. 201 ...................................................................................................7

Investigation "DOI" ...............................................................................................5

2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 16:11 (2025-1 Ed.) ........................4

2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 18:48 (2025-1 Ed.) ........................2

## **Preliminary Statement**

Plaintiffs/Counterclaim Defendants, the City of New York (the "City"), by and through the FDNY, and the FDNY Foundation, Inc. (the "Foundation") (collectively, the "FDNY Parties") and Assistant Corporation Counsel Gerald Singleton ("ACC Singleton") respectfully submit this memorandum of law in support of their motion to dismiss Defendant Juan Henriquez ("Henriquez")'s First Amended Counterclaims (the "FACC") (ECF Doc. 88), which purports to allege federal trademark infringement claims concerning the FDNY Parties' use of the word mark, MEDICAL SPECIAL OPERATIONS CONFERENCE (the "MSOC Mark"), and the acronym MSOC (collectively, the "MSOC Marks"), pursuant to Sections 32 and 43(a) of the Trademark Act, 15 U.S.C. §§ 1114 and 1125(a) (First and Third Claims); a common law trademark infringement claim (Second Claim); a first amendment whistleblower retaliation claim (Fourth Claim); and a pendant whistleblower retaliation claim under N.Y.C. Ad. Code § 12-113 (Fifth Claim).

The FDNY Parties seek dismissal of the trademark claims based on Henriquez's lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), and his failure to join members of the Medical Special Operations Community (the "COMMUNITY"), who are necessary parties under Fed. R. Civ. P. 19, given the FACC's allegations and Henriquez's numerous statements that the COMMUNITY, a non-profit organization, owns the MSOC Marks and that he was at all relevant times merely acting as a licensee on its behalf.[1]

---

[1] The fact that Henriquez obtained a trademark registration for the MSOC Mark in 2019 under Section 2(f) of the Trademark Act is no consequence. The FDNY Parties, as Plaintiffs, have alleged that the registration was procured fraudulently and should be cancelled, based on Henriquez's failure to disclose that the FDNY Parties had been using the mark and had claimed an ownership interest therein (ECF 86, Count I). Henriquez did not identify the COMMUNITY as the true owner of the marks. Cases holding that a registrant has standing to assert trademark claims are inapposite, in that no such case, to Plaintiffs' knowledge, has involved similar facts.

The FDNY Parties also seek dismissal of the trademark claims for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P 12(b)(6), based on the Second Circuit's holding that the MSOC Marks are merely descriptive and not protectable absent a showing of secondary meaning under Section 2(f) of the Trademark Act. The FACC fails to allege plausible facts showing that the MSOC Marks had acquired distinctiveness and a secondary meaning when the FDNY Parties first began using the marks in 2013, and fails to allege plausible facts showing that the parties entered into an implied license at that time.[2] This Court did not address each of the specific questions posed by the Second Circuit regarding these issues in its post-remand decision re-granting a preliminary injunction, but instead found that an implied license between the parties existed in 2013, and that secondary meaning existed in 2019 when the FDNY Parties' allegedly infringing use began. The FACC fails to allege plausible facts showing that the FDNY Parties needed a license to use the MSOC Marks in 2013; or that the FDNY Parties contemplated or accepted a license and/or acknowledged Henriquez's rights in the marks; or that Dr. Isaacs had actual or apparent authority to enter into an oral or implied license in violation of well-established City contracting rules and applicable law; or that there was any consideration for such a license, much less a meeting of the minds on the material terms of such a license. Notably, opposing

---

[2]  In finding that the parties had entered into an implied trademark license in 2013, this Court misapprehended the facts and applicable law. No facts whatsoever are alleged in the FACC to show that Henriquez supervised and controlled the quality of the FDNY MSOC conferences and/or the use of the MSOC Marks between 2013 and 2019. And no evidence was proffered by Henriquez in the preliminary injunction hearing to show that the parties ever contemplated or mentioned a license at any time before 2019, when he first claimed that he had been granted permission by the COMMUNITY to use the marks. It is a hornbook principle that a trademark owner has a duty to control the use of a licensed mark, as well as the quality of the goods and services bearing the mark. An implied "naked license" would result in the forfeiture of the mark and constitute a complete defense to an infringement claim. *See* 2 McCarthy on Trademarks and Unfair Competition, § 18:48 (2025-1 Ed.)

2

counsel specifically declined the Court's invitation to amend the counterclaims to address the issues raised and the questions posed by the Second Circuit. See ECF Minute Entry entered 6/14/2025; Letter (ECF 102) advising the Court of Defendant's intention not to amend his counterclaims; and ECF Scheduling Order dated 6/21/2025.

The FDNY Parties seek dismissal of the whistleblower retaliation claims based on the FACC's failure to state legally cognizable claims. The FACC fails to allege plausible facts concerning the material elements of a First Amendment retaliation claim in that Henriquez was not plausibly acting as a private citizen in regard to a matter of public concern in allegedly making a whistleblower claim. As a City employee, he had a duty to report alleged wrongdoing. Furthermore, the FACC alleges that Henriquez owns a registration for the MSOC Mark and, therefore, he possesses a personal proprietary interest in the MSOC Marks. Those indisputable facts are plainly inconsistent with the FACC's allegation that he was acting as a private citizen.

Finally, ACC Singleton seeks dismissal of the whistleblower retaliation claims alleged against him in his individual capacity based on the doctrine of absolute immunity, which applies to actions taken by an attorney representing the City in his capacity as an Assistant Corporation Counsel. The FACC implausibly alleges that Singleton "acted on his own individual behalf and also as a final policymaker" (FACC, ¶ 112), in an obvious, but futile attempt to state such claim against ACC Singleton. Those allegations are legal conclusions and they are implausible. In any event, such claims should be dismissed *sua sponte*, pursuant to Fed. R. Civ. P. 12(b)(4)(insufficient process), because no summons was ever requested or served on ACC Singleton as required by Fed. R. Civ. P. 4(m).

### Relevant Factual Allegations

The FACC alleges that Henriquez is and has been a full-time FDNY paramedic since 2001. FACC, ¶ 11. It alleges that "Henriquez and several other ('MSOC Community') conceived of the

idea" for the conferences and "first used it in commerce as a trademark ('MSOC Mark')" for an event "in Ohio in early 2011, which he organized in partnership with several private industry providers." *Id.*, ¶¶ 12-13.[3] "Henriquez and others" asked Dr. Isaacs to join them at a conference in Florida so that he could see the "type of skills training that the MSOC Community hoped to bring" to a wider first responder audience. *Id.*, ¶ 15. The FACC alleges that Dr. Isaacs knew "that Henriquez and others in the MSOC Community had previously produced multiple MSOC-branded events" and "intended to continue running MSOC-branded events in other locations," and that "the collaboration with the FDNY was intended to be a New York City iteration of the MSOC Community's larger effort." *Id.*, ¶¶ 17-18. The FACC alleges that Henriquez was the principal organizer of the FDNY MSOC conferences. *Id.*, ¶ 21. The FACC alleges that Henriquez that he devoted time to organizing FDNY-hosted events, outside the scope of his employment, and that he had not been formally assigned by his superiors to work on such events. *Id.*, ¶ 22.

The FACC alleges that because of his concern over the use of the FDNY Parties' trademarks in connection with the FDNY MSOC conferences, he entered into a Donation Agreement to create a website for the 2014 conference, which granted him permission to display the FDNY Parties intellectual property on the website. *Id.*, ¶ 28. The Donation Agreement does not state that the MSOC Marks are protected or protectable as trademarks, nor does it state that Henriquez owns such marks.

The FACC alleges that "Henriquez and the MSOC Community continued to produce MSOC-branded events with other organizations outside of New York" and that the FDNY Parties "knew that Henriquez continued to produce these MSOC-branded events." *Id.*, ¶¶ 39-41.

---

3  The allegation that Henriquez conceived of the idea for presenting conferences using plainly descriptive words is legally irrelevant. An idea for a trademark is not protectable. See 2 McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 16:11 (2025-1 Ed.)

The FACC alleges that Henriquez discovered financial improprieties relating to the FDNY Parties handling of conference funds and reported his concerns to Dr. Isaacs" in late 2017 and to FDNY counsel Moira Archer and ACC Singleton, in November 2019. *Id.*, ¶¶ 47-50. The FACC alleges that Henriquez's concerns were ignored and that ACC Singleton threatened his employment, consistent with the "FDNY's custom and practice of retaliating against whistleblowers." *Id.*, ¶ 50. The FACC alleges that Henriquez also reported his concerns to the City's Department of Investigation "DOI"). *Id.*, ¶ 51.

The FACC alleges Henriquez told Dr. Isaacs and another FDNY official that "[he] and the MSOC Community were planning on moving the FDNY-hosted event to California." *Id.*, ¶ 54. It alleges that "Dr. Isaacs responded in a manner that indicated the he understood that the MSOC Mark did not belong [to] the FDNY and that Henriquez and the MSOC Community were entitled to revoke the FDNY's permission to use the MSOC Mark." *Id.*, ¶ 54.

The FACC alleges that Dr. Isaacs told members of the MSOC Community that the FDNY-hosted MSOC might not go forward in 2019. *Id.*, ¶ 55. It alleges that "Henriquez told Dr. Isaacs, other FDNY and Foundation officials, and attorney Ms. Archer" that the FDNY Parties should stop using the MSOC Marks. *Id.*, ¶ 56.

The FACC alleges that the FDNY Parties did not stop using the MSOC Marks and initiated a years-long campaign of retaliation. *Id.*, ¶¶ 57, 59. It alleges that the FDNY initiated a disciplinary proceeding against Henriquez in bad faith, which upon information and belief was initiated based on a referral from [ACC Singleton] following his November 2019 meeting with Henriquez." *Id.*, ¶ 63. The FACC alleges that ACC Singleton completely ignored his counsel's whistleblower allegations, and that the City took no action to investigated or remedy the corruption issues he raised. *Id.*, ¶ 66. The FACC alleges that, after ACC Singleton responded to a cease-and-desist letter

from Henriquez's trademark counsel, which alleged that the FDNY Parties were infringing the MSOC Mark, the City filed the instant lawsuit. *Id.*, ¶¶ 68-69. The FACC alleges that Henriquez is the owner of a registration for the MSOC Mark issued by the USPTO on August 18, 2020. *Id.*, ¶ 77.

The FDNY Parties initiated this action on May 31, 2022, by filing a complaint (ECF Doc. 1) seeking *inter alia* a declaratory judgment of non-infringement regarding their use of the MSOC Marks and cancellation of the federal trademark registration issued to Henriquez based on the materially false statement in his application for the registration that he owned the MSOC Mark and that no one to the best of his knowledge had an interest in the mark.

## **ARGUMENT**

### I.   **THE FACC DOES NOT CONTAIN PLAUSIBLE FACTUAL ALLEGATIONS CONCERNING THE MATERIAL ELEMENTS OF EACH OF THE ALLEGED COUNTERCLAIMS AND IT SHOULD BE DISMISSED IN ITS ENTIRETY**

#### **Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, the court considers "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

A court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, the court need not accept as true "naked assertion[s]" unsupported by facts. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 (holding that a complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Courts are "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Iqbal*, 556 U.S. at 678 (no deference to legal conclusions in a complaint).

In considering a motion to dismiss under Rule 12(b)(6), the court may look at the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken. *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002)). Among other things, the Court can take judicial notice of information on a party's website and government websites as long as the website's authenticity is not in dispute and "it is capable of accurate and ready determination." *See* Fed. R. Evid. 201; *Yourman v. Wildlife Conservation Soc'y*, No. 24-CV-337(EK)(LB), 2024 WL 4198501, 2024 U.S. Dist. LEXIS 165784, *3 n.1 (E.D.N.Y. Sept. 15, 2024); and *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 310 and n.7 (E.D.N.Y. 2016), quoting *Wells Fargo Bank N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (taking judicial notice of information regarding the ownership and structure of various entities from web searches and printouts of the entities' websites).

It is well-settled that the Court, on a motion to dismiss, can consider documents either in Henriquez's possession or of which Henriquez had knowledge and relied on in bringing suit. *Brass*

*v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Likewise, the Court can consider documents "integral to the preparation of the pleadings." *Miller v. Lazard Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007). And "[i]f these documents contradict" the FACC's allegations, "the documents control" and the Court need not accept the FACC's misstatements as true. *Rapoport v. Asia Electronics Holding Co., Inc.,* 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000). *See also Palm Beach Strategic Income v. Stanley P. Salzman, P.C.*, No. 10-CV-261 (JS) (AKT), 2011 WL 1655575, 2011 U.S. Dist. LEXIS 46867, *25 (E.D.N.Y. May 2, 2011).[4]

Thus, the Court may properly consider documents that were submitted at the preliminary injunction hearing containing statements made by Henriquez, such as emails, letters and the Donation Agreement referenced in the FACC. In that regard, the Second Circuit has held:

> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document "upon which [the complaint] solely relies and which is integral to the complaint" may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted). *See, e.g, Sazerac Company, Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("In the event that a plaintiff alleges a claim based on a written instrument, as is the case here, the court may consider such an instrument in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part

---

[4] For example, on January 21, 2019, Henriquez sent an email to FDNY attorney Moira Archer demanding that the FDNY Parties cease using the MSOC Marks, stating: "[T]he term MSOC is not an FDNY term, **rather it belongs to the Medical Special Operations Community Organization, which I personally received permission from to use this term.**" *See* ECF Doc. 52-13 (emphasis added). This email is consistent with the FACC's allegations concerning the COMMUNITY's ownership interest in the MSOC Marks (*see* POINT II, *infra*; FACC, ¶¶ 12, 15, 17-18, 21), but arguably inconsistent with the FACC's allegation that Henriquez is the owner of the MSOC Mark by reason of the USPTO trademark registration that was issued on August 18, 2020 (*id.*, ¶ 77). To the extent there is an inconsistency, this document controls and precludes Henriquez from denying the ownership interest of the COMMUNITY or its constituent members.

thereof . . . ."); *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002) ("the Court may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action.").

In sum, while a court must deem the plaintiff's allegations to be true on a motion to dismiss, "the standard to govern the sufficiency of the complaint presumes 'well-pleaded' allegations, and it is only those pleadings the courts are charged to deem true." *Rieger v. Drabinsky*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001). "Thus, a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405-06.

## II.    HENRIQUEZ HAS NOT PLAUSIBLY ALLEGED THAT HE HAS STANDING TO ASSERT TRADEMARK CLAIMS AS AN OWNER AND USER OF THE MSOC MARKS

The COMMUNITY, not Henriquez, is the owner of the MSOC Marks. The fact that Henriquez registered the marks in 2019 is irrelevant to consideration of whether Henriquez himself has standing to bring these claims.

The FACC is rife with allegations that the COMMUNITY is the actual owner of the marks and the only entity that engages in commerce with regards to the marks.[5] *See* FACC at ¶ 12

---

[5] The Court may take judicial notice of the online podcast interview of Henriquez and Dr. Isaacs, wherein Henriquez talked about the origin of the FDNY MSOC and stated unequivocally that there had been no similar conferences before the FDNY MSOC. Henriquez did not state that he or the COMMUNITY had any interest in the FDNY MSOC, nor did he state that he had previously produced any non-FDNY MSOC events in other locations. His interview statements constitute admissions, as well as statements against pecuniary interest, and they are controlling to the extent they are inconsistent with the FACC. *See* https://www.fdnypro.org/s3-e1-the-fdny-medical-special-operations-conference-msoc-with-dr-doug-isaacs-and-paramedic-juan-henriquez/ (ECF Doc. 52-12)..

("Henriquez and several others ('MSOC Community') conceived of the idea to bring military-level special operations medical skills and training to the wider first responder community via a series of conferences"); ¶ 15 ("Shortly after Henriquez and the MSOC Community conceived of idea for MSOC events"); ¶ 18 ("Henriquez and the MSOC Community intended to continue running MSOC-branded events in other locations"); ¶ 55 ("Henriquez and the MSOC Community were entitled to revoke the FDNY's permission to use the MSOC Mark").

The Court may take judicial notice that the COMMUNITY is a not-for-profit corporation that was organized on March 20, 2019 and exists under the laws of Florida. See https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityNam e&directionType=Initial&searchNameOrder=MEDICALSPECIALOPERATIONSCOMMUN% 20N190000034420&aggregateId=domnp-n19000003442-1.The registration lists Jose Hernandez, Juan Henriquez, and Vincent Johnson as Officers or Directors of the corporation.

The Court may take judicial notice of the COMMUNITY's website, www.medicalspecialoperationscommunity.org (with re-direct to www.medspecops.org), which indicates that the COMMUNITY owns the MSOC Marks. An ICANN WHOIS search tool, which contains website ownership data, indicates that the website was first created on January 13, 2019, and lists Joe Hernandez as the registrant and owner of the website. See https://lookup.icann.org/en/lookup. The website promotes MSOC conferences held at the National Urban Search & Rescue in Florida and uses the MSOC Marks as follows:

**Medical Special Operations Conference®**

We would like to extend our sincere gratitude to all the attendees, guests, instructors, and innovative vendors who helped make the MSOC at the National Urban Search & Rescue Conference 2024 in Orlando, Florida, an outstanding success. This annual event continues to be a vital platform for professionals from across the country to engage in both formal and hands-on educational experiences and meaningful networking opportunities.

Your participation, dedication, and invaluable contributions played a significant role in the success of the conference, and we deeply appreciate everything you did to make it such a memorable event. Together, we are strengthening the safety and resilience of communities nationwide.

We are excited to announce that the MSOC at the NUSAR 2025 will take place in Orlando, Florida, once again, from November 10-12, 2025. We hope to see you there as we continue to build on the success of this year and inspire even more collaboration, learning, and growth.

Thank you once again to everyone who made the National Urban Search & Rescue MSOC initiative a resounding success. We look forward to seeing you in November 2025!

The website also has a footer, which indicates that the COMMUNITY is the copyright owner of MSOC-related materials (Copyright © 2025 Medical Special Operations Community). *See* https://medspecops.org/msoc/ (last visited May 13, 2025).

Thus, the foregoing website materials, of which the Court may properly take judicial notice, plainly contradict the FACC's allegations. They control and render the FACC's allegations regarding Henriquez's ownership of the MSOC Marks, as opposed to the registration he obtained in 2019, implausible.

### III.    HENRIQUEZ HAS FAILED TO JOIN MEMBERS OF THE MEDICAL SPECIAL OPERATIONS COMMUNITY WHO ARE NECESSARY PARTIES UNDER FED. R. CIV. P. 19

Henriquez's failure to join the COMMUNITY is highly prejudicial to Plaintiffs, and puts them at a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a). The COMMUNITY was named as party in Plaintiffs' initial complaint, (ECF Doc. 1), but was subsequently removed as a party, without prejudice to refiling, upon Henriquez's assertions that they possess no ownership rights in the mark. The FACC contains allegations that make clear that the COMMUNITY is the actual owner of, or at least has a substantial interest in, the MSOC Marks.

11

Rule 19(a) provides, in part, that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence the court cannot accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1)(A). A party is "required" if the party has an interest in the action and resolution of the action may either "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B). "If a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).

"For obvious reasons, trademark owners are treated as necessary parties to a trademark infringement action." *Alcon Vision, LLC v. Lens.com, Inc.*, 18-cv-407, 2022 WL 1665453, 2022 U.S. Dist. LEXIS 94031 * 25 (E.D.N.Y. May 25, 2002). "Courts have held consistently that the owner of allegedly infringed intellectual property rights is a person needed for just adjudication under Rule 19." *Reynolds v. Banks*, 12-cv-11664, 2012 WL 2524332, 2012 U.S. Dist. LEXIS 91064 *14 (E.D. Mich. June 29, 2012) (collecting cases).

Thus, even if the Court finds that Henriquez himself has standing to bring the trademark claims based on his registration of the MSOC Mark, the FACC makes clear that the COMMUNITY has at least some interest in the marks. It is the COMMUNITY that maintains a website using the marks, the COMMUNITY that hosts the conferences that form the basis of any claim to use the MSOC Marks in commerce, and the COMMUNITY that uses the MSOC Marks as a corporate name. The suggestion in the FACC that Henriquez is the sole owner of the MSOC Marks is not plausible. The COMMUNITY is a necessary party in whose absence this case should not proceed.

12

The proper remedy for failure to join a necessary party is to order joinder. If the party cannot be joined, or if the party is indispensable and refuses to appear, the case should be dismissed. *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1289 (10th Cir. 2003).

## IV.    HENRIQUEZ HAS FAILED TO ALLEGE PLAUSIBLE CLAIMS FOR TRADEMARK INFRINGEMENT

The Second Circuit held the MSOC Marks are merely descriptive. *Henriquez*, 98 F.4th at 413 (2d Cir. 2024) ("'Medical Special Operations Conference' is only inherently descriptive. For the same reasons, 'MSOC' is also descriptive."). The Second Circuit posed specific questions to be considered on remand. *Id.* at 416. The Second Circuit phrased the issues to be considered on remand as follows: "We foresee several issues that the district court may need to address if Henriquez renews [the licensee estoppel] theory. They include: 1. Whether a party who uses a mark subject to an implied license from the mark holder is estopped from contesting the mark's validity. 2. Whether any licensor may obtain trademark rights over a descriptive mark when secondary meaning is acquired, in whole or in part, through the mark's use by a licensee. 3. Whether any FDNY official with whom Henriquez worked had actual or apparent authority to enter licensing contracts concerning the FDNY's use of the marks. 4. Whether any FDNY official entered a licensing contract with Henriquez concerning the FDNY's use of the marks. 5. Whether any such contract subjected the FDNY's use of the marks to a license from Henriquez. 6. Whether the marks acquired secondary meaning through the FDNY's use." *Id.* The FACC fails to allege adequate or plausible facts concerning these issues, particularly the existence of an implied license.

As discussed in the City's prior supplemental brief in opposition to Defendant's renewed motion for a preliminary injunction (ECF Doc. 107), there is no factual or legal basis from which the Court could conclude that an implied license existed between the parties. The FACC rest on vague and conclusory allegations regarding what was communicated between Henriquez, Dr.

Isaacs, and those in decision-making roles at FDNY and the Foundation. *See, e.g.*, FACC, ¶ 16 ("In mid-2012, Dr. Isaacs approached Henriquez about bringing MSOC-branded events to New York City, to be hosted by the FDNY in FDNY facilities"); ¶ 19 ("Henriquez informed Dr. Isaacs that the explicit purpose of MSOC-branded events was to benefit front-line responders"); ¶ 22 ("The nature of the relationship between the FDNY, on the one hand, and Henriquez's MSOC-branded events, on the other – *i.e.*, that the FDNY and Foundation would act as the New York host organizations for the independent MSOC event – was made clear in conversations between Henriquez and Dr. Isaacs. It was also made clear to various high-ranking FDNY officials in early planning meetings…").

The FACC contains no plausible allegations regarding the material terms of a license agreement. While the exact circumstances in which an implied license may be found are not yet settled in the Second Circuit, any test "require[s] a meeting of the minds between the parties to permit the particular usage at issue." *Abkco Music, Inc. v. Sagan*, 50 F.4th 309, 320 (2d Cir. 2022). The FACC contains no allegation that there was anything close to a "meeting of the minds" between Henriquez and any person with decision-making power within the FDNY or the Foundation.

Further, non-waivable rules governing City contracts would render any such license void. Under New York law, an agreement with the City must be in writing, approved as to form by the Corporation Counsel, and registered with the Comptroller. *See JFK Holding Co., LLC v. City of New York*, 68 A.D.3d 447 (1st Dep't 2009); *Airday v. City of New York*, 406 F.Supp.3d 313, 320 (S.D.N.Y. 2019) ("Any contract not approved consistent with these procedures is unenforceable as a matter of state law"). "Disputes involving the scope of a license present courts with a question of contract." *Spinelli v. NFL*, 903 F.3d 185, 197 (2d Cir. 2018) (on a motion to dismiss a copyright

claim, interpreting a licensing agreement under contract principles). The FACC does no allege that the parties entered into any licensing agreement regarding use of the MSOC Marks.

The FACC does not plausibly allege that the MSOC Marks acquired distinctiveness and secondary meaning through the FDNY Parties' use of the marks from 2013-2019. There is no allegation that the parties ever specially discussed a license or its terms.

Although the Court has already found to the contrary in its decision dated February 19, 2025, (ECF Doc. 111), we reiterate and incorporate by reference all of the arguments concerning the issued raised by the Second Circuit that are contained in our prior brief (ECF Doc. 107).

## V.    THE WHISTLEBLOWER RETALIATION COUNTERCLAIMS ARE FACTUALLY IMPLAUSIBLE

### A.    The First Amendment Whistleblower Retaliation Claim Lacks Plausible Factual Allegations Concerning the Material Elements of the Claim

Where a public employee is alleging retaliation for the exercise of First Amendment free speech rights, he or she must initially demonstrate that: (1) the speech at issue was "made as a citizen on matters of public concern rather than as an employee on matters of personal interest," *Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002); (2) he or she suffered an adverse employment action, *Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2001); and (3) "the speech was at least a substantial or motivating factor in the [adverse employment action]," *Sheppard v. Beerman*, 317 F.3d 351, 355 (2d Cir. 2003) (internal quotations and citations omitted). *See also Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003).

#### i.    *Henriquez was not speaking as a citizen on a matter of public concern*

The FACC does not allege facts to plausibly show that the alleged speech addressed a matter of public concern. To fall within the realm of the "public concern," an employee's speech must "relate to a[] matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983) ("When employee expression cannot be fairly considered as

relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."). Consequently, First Amendment protection is unavailable when "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Id.* at 147.

If the speech is focused on matters personal to the employee, it cannot be classified as being on a matter of public concern and the government, acting as an employer, "has greater latitude to discipline" the employee. *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Connick*, 461 U.S. at 146). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve. *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999) (citing *Connick*, 461 U.S. at 148 n.7).

Additionally, the Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. . ." *Garcetti*, 547 U.S. at 421. Speech made "pursuant to" a public employee's duties is defined as "speech that owes its existence to a public employee's professional responsibilities." *Id.* Nonetheless, "[t]he First Amendment protects some expressions related to the speaker's job." *Id.* Accordingly, the fact that the speech concerns the subject matter of the speaker's employment is not dispositive of whether or not it is protected. *Id.*

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a

personnel decision taken by a public agency in reaction to the employee's behavior." *Connick*, 461 U.S. at 147; *Dudzik v. City of New York*, No. 01 Civ. 2450 (NRB), 2003 WL 203226, 2003 U.S. Dist. LEXIS 1287, at \*10-11 (S.D.N.Y. Jan. 21, 2003).

Here, Henriquez was motivated solely by his desire to protect his alleged personal ownership interest in the MSOC Marks and to enforce an alleged agreement concerning the use of funds. FACC, ¶ 46 ("Henriquez discovered that profits from the FDNY-hosted MSOC events were not being used for the benefit of front line first responders, as had been previously discussed and agreed upon between Henriquez and Dr. Isaacs."). This admission alone defeats any possible argument that he was speaking as a citizen as a matter of public concern.

Furthermore, Henriquez had a duty as a City employee to report alleged financial corruption. Pursuant to Mayoral Executive Order 16, City employees must report allegations of corruption to proper authorities, including DOI. This ensures that the charges will be probed confidentially and professionally by DOI investigators independent of the employee's own agency and superiors. *See* **https://www.nyc.gov/site/doi/report/reporting-obligation.page**. "A public employee speaking pursuant to his official job duties is not, as a matter of law, speaking in the capacity of a citizen and thus is outside the scope of First Amendment protection." *Martir v. City of New York*, No. 07 Civ. 7922 (LTS), 2009 WL 2191332, 2009 U.S. Dist. LEXIS 64925, at \*18 (S.D.N.Y. July 23, 2009) (citing *Garcetti*, 547 U.S. at 421).

Finally, Henriquez did not use a public forum to address a matter of political, social or other concern to the community. While "a private conversation with an employer does not preclude a finding that a public employee was speaking on a matter of public concern … [n]onetheless, the forum that a plaintiff chooses is one factor in determining whether the speech implicated a matter of public concern." *Benvenisti v. City of New York*, No. 04 Civ. 3166 (JGK), 2006 WL 2777274,

2006 U.S. Dist. LEXIS 73373, at *38 (S.D.N.Y. Sep. 23, 2006). Here, the alleged speech occurred in private workplace conversations, and not in a public forum, such as social media.

   *ii.*  *There are no allegations regarding any adverse employment action*

   While Henriquez cannot even satisfy the first prong, he also fails to plead plausible facts regarding the alleged retaliation. The whistleblower retaliation claims are based on threats allegedly made by ACC Singleton, the City's lead attorney in his capacity as counsel representing the FDNY Parties. See N.Y.C. Charter § 394 ("the corporation counsel shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested"). Significantly, ACC Singleton's first and only face-to face contact with Henriquez prior to the commencement of this action occurred more than a year after the trademark ownership dispute arose, and long after the FDNY made a decision to not allow Henriquez to continue to work on the FDNY MSOC.

   The FACC alleges that various retaliatory actions were taken by the FDNY in response to his alleged whistleblowing, but none of the alleged acts constitutes an adverse employment action. Henriquez's employment was not terminated, nor was his pay reduced or his duties. All of the alleged actions are consistent with the City's right to protect its intellectual property, by taking various actions in response to an adverse claim by a faithless employee who was asserting a personal and exclusive ownership interest in trademark rights, completely unrelated to his employment, and accusing the City of infringing his rights. Indeed, The FACC specifically alleges that his work on the FDNY-hosted MSOC was not part of his duties as a rescue paramedic, which position is not consistent with his claim of adverse employment action. Regarding alleged retaliatory actions, the FACC alleges:

> "Shortly after Counterclaim Plaintiff initiated his whistleblowing activity, the FDNY began retaliating against Counterclaim Plaintiff and his employment with the FDNY. This retaliation has included: (a) falsely asserting exclusive ownership over

the MSOC Mark, Acronym Mark, and FDNY-MSOC Logos; (b) launching an investigation into Henriquez over baseless allegations of financial misdealing; (c) initiating a bad faith disciplinary proceeding against Henriquez before the BIT, which the BIT hearing officer determined was wholly "unsubstantiated" and "should not have been escalated as a disciplinary matter"; (d) withholding from Henriquez various awards, overtime opportunities, and shift transfers to which he was otherwise eligible or entitled; (e) filing the instant declaratory judgment lawsuit; (f) filing the First Amended Complaint, which added a meritless and bad faith claim for breach of fiduciary duty against Henriquez, and sought to claw back almost four years of Henriquez's earned salary; (g) threatening to file a defamation lawsuit against Henriquez for engaging in protected whistleblowing speech; and (h) threatening to report Henriquez to the City's Conflict of Interest Board.

FACC, ¶106.

The FACC implausibly alleges that ACC Singleton acted as a final policymaker with respect to all of the alleged retaliatory actions. *Id.*, ¶ 109 ("Mr. Singleton, as the Assistant Corporation Counsel representing the City, including the FDNY and the Foundation, in this lawsuit, acted as a final policymaker with respect to the various retaliatory actions in which he engaged on the Counterclaim Defendants' behalf as their lead counsel"). However, there is no factual or legal basis for the allegation that ACC Singleton was a decision maker with respect to any of the alleged actions, and there is no case law authority to impute liability for alleged retaliatory acts to an attorney who is representing a party and advocating a legal position on its behalf.

### iii. *The Counterclaims do not plausibly allege a causal connection*

The FACC also fails to plausibly allege any causal connection between Henriquez's speech and the alleged retaliatory action. In order to satisfy the causation prong, Henriquez must allege specific facts to demonstrate at the very least that the party who retaliated against him knew of the protected speech that allegedly formed the basis for his or her retaliatory action. *See Jeune v. Crew*, 2017 WL 4357382, at *17 (collecting cases); *Thomas v. New York City Dept. of Educ.*, No. 09-CV-5167-KAM-ST, 2019 WL 13180922, 2019 U.S. Dist. LEXIS 29668, at *14 (E.D.N.Y. Feb.

22, 2019), *report and recommendation adopted and complaint dismissed*, 2019 U.S. Dist. LEXIS 40910 (E.D.N.Y. Mar. 12, 2019) (Judge Matsumoto). First Amendment retaliation claims require "the protected speech [to be] a substantial motivating factor in the adverse employment action." *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167-68 (2d Cir. 2006). The showing can be made directly, i.e., through "conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged retaliatory attitude," or circumstantially, i.e., the "protected activity was followed" close in time to the adverse action. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003). The FACC contains no allegations supporting any causal connection.

**B.      There Is No Private Right of Action for the Pendant Whistleblower Retaliation Claim Under The New York City Administrative Code**

The FACC does not plausibly allege a pendant whistleblower retaliation claim under the NYC Administrative Code. It is well settled that there is no private right of action to enforce Section § 12-113 of the City Administrative Code.

First, both Mayoral Executive Order 16 (of 1978) and the NYC Administrative Code § 12-113 require that any employee wishing to be protected by the Whistleblower law must promptly report any corruption to either the Department of Investigation, a City Council member, the Public Advocate, or the Comptroller in order to receive such protection. The FACC contain no allegation that Henriquez ever made such a report, and a search of publicly available DOI records does not show that any reports of corruption were made by Henriquez.

Furthermore, the claim is legally untenable because NYC Administrative Code § 12-113 does not provide any private right of action. *See Healy v. City of New York Dep't of Sanitation*, No. 04 Civ. 7344 (DC), 2006 WL 3457702, at *7, 2006 U.S. Dist. LEXIS 86344 (S.D.N.Y. Nov. 22, 2006) (Denny Chin, J.) ("Section 12-113 provides no private right of action for a city officer

or employee."); *Fabbricante v. City of New York*, No. 01-CV-5575 (CPS), 2002 WL 34438898, 2002 U.S. Dist. LEXIS 27815 (E.D.N.Y. Nov. 12, 2002); *Klein v. City of New York,* No. 10 Civ. 9568 (PAE) (JLC), 2011 U.S. Dist. LEXIS 125375, 2011 WL 5248169 (S.D.N.Y. Oct. 28, 2011), report and recommendation adopted, 2012 U.S. Dist. LEXIS 21617, 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012); *Batyreva v. New York City Dept. of Educ.,* 19 Misc. 3d 1128[A], 866 N.Y.S.2d 90, 2008 NY Slip Op 50928[U], 2008 WL 1932224, at *7 (Sup. Ct. N.Y. Cnty.) (denying motion to amend to allege retaliation claim under Section 12-113), rev'd on other grounds, 57 A.D.3d 322, 869 N.Y.S.2d 440 (1ˢᵗ Dept.  2008). Consequently, the claim should be dismissed.

## VI.    THE DOCTRINE OF ABSOLUTE IMMUNITY BARS CLAIMS AGAINST ACC SINGLETON BASED ON HIS CONDUCT AS THE CITY'S COUNSEL

The only claims against ACC Singleton involve actions taken by him in the course of litigation or potential litigation in his official capacity as an attorney for the City. He is therefore absolutely immune from liability for such actions. *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006); *see also Johnson v. City of New York*, No. 16-cv-2879, 2019 U.S. Dist. LEXIS 95418, 2019 WL 2393716 at *4 (E.D.N.Y. June 6, 2019); *Bradley v. City of New York*, No. 14-cv-4289, 2016 WL 1491017 at *2, 2016 U.S. Dist. LEXIS 34941 (E.D.N.Y. Mar. 16, 2016) *report & recommendation adopted* 2016 WL 1541439 (E.D.N.Y. Apr. 14, 2016) (applying absolute immunity to attorneys in the Office of the Corporation Counsel).

In *Mangiafico*, the Second Circuit noted that "[a]s a general principle, a government attorney is entitled to absolute immunity when function as an advocate of the state in a way that is intimately associated with the judicial process." 471 F.3d at 396. The Court noted that in prior cases, it had "expanded this principle to apply to the functions of a government attorney 'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits – including the defense of such actions." *Id.*, citing *Barrett v. United States*,798 F.2d

21

565, 571-572 (2d Cir. 1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation") and *Spear v. West Hartford*, 954 F.2d 63,66 (2d Cir. 1992) ("Such immunity extends to ... to government attorneys who initiate civil suits").

Absolute immunity has been afforded specifically to the Corporation Counsel and to an Assistant Corporation Counsel (ACC) in numerous cases in the Eastern and Southern Districts of New York on motions to dismiss. *See, e.g., El-Bey v. New York*, No. 12-CV-2385, 2012 WL 1902268, at *2, 2012 U.S. Dist. LEXIS 73330 (E.D.N.Y. May 24, 2012) ("[T]he Corporation Counsel named by plaintiff, Stacy L. Cohen, an attorney who is defending a governmental entity in ongoing litigation or pursing an action on behalf of the government, is entitled to immunity similar to that of a prosecutor"); *Nachmenson v. Gluck*, No. 22-CV-627, 2022 WL 1093220, at *3, 2022 U.S. Dist. LEXIS 67484 (E.D.N.Y. Apr. 12, 2022) ("Because Plaintiffs claims under § 1983 against Corporation Counsel arise from litigation activities while representing the City of New York in Plaintiffs State Court civil action, Plaintiffs claims for damages against Corporation Counsel are barred by absolute immunity'").

Alternatively, even if this Court finds that Singleton is not entitled to absolute immunity, he is at the very least entitled to qualified immunity. "Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Giles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A right is 'clearly established' if 'the contours of the right ... are sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

When an official invokes a claim of qualified immunity to support a motion to dismiss allegations that the official violated federal law, "a court must first consider a threshold question: Do the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right?" *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007). "Only if the answer to the first question is yes must a court proceed to the inquiry for qualified immunity: was the right at issue clearly established at the time of the defendant's actions?" *Id.*

The allegations in the FACC regarding ACC Singleton do not plausibly support a conclusion that any statement he made or any action he took violated Henriquez's constitutional rights, let alone that any such right is "clearly established." The only alleged action taken by ACC Singleton are that he made a statement which Henriquez interpreted as a threat to his employment and a conclusory allegation, on information and belief, that he initiated a referral. Neither of these actions violate Henriquez's constitutional rights.

23

## CONCLUSION

Based on the foregoing, the FACC should be dismissed in its entirety.

Dated: New York, New York
      May 14, 2025

                    MURIEL GOODE-TRUFANT
                    Acting Corporation Counsel
                      of the City of New York

                    By /s/ Gerald E. Singleton
                    Gerald E. Singleton
                    Gavin B. Mackie
                    Assistant Corporation Counsel
                    100 Church Street, Room 20-093
                    New York, New York 10007
                    Tel (212) 356-2036
                    Cell: (917) 734-7906; (646)830-1066
                    Fax: (212) 356-2038
                    gsinglet@law.nyc.gov
                    Attorneys for Plaintiffs